## Ohio-Clover Leaf Dairy Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 24642, 33164.    Promulgated October 31, 1928.

*Thomas O. Marlar, Esq., Harry J. Gerrity, Esq.*, and *L. T. Ko-nopak, C. P. A.*, for the petitioner.

*M. E. McDowell, Esq.*, for the respondent.

1324

1326

OPINION.

LITTLETON: The question presented by the record is whether petitioner, as lessee of the physical assets which were held under the lease set forth in the findings of fact, is entitled, in computing its net income for the years 1922 and 1923, to deductions, (1) for depreciation of the leased assets, and (2) for alleged losses resulting from the sale of certain of the leased assets.

The Revenue Act of 1921 provides that in computing its net income a corporation is entitled to deduct a reasonable amount for the exhaustion, wear and tear of its property, and also to deduct losses sustained in its trade or business, unless compensated for by insurance or otherwise. The petitioner contends, and the Commissioner denies, that under the circumstances and conditions connected with the acquisition and possession of the assets in question, these provisions of the taxing statute authorize the deductions sought.

In support of its contention the petitioner calls our attention to the decision of the Circuit Court of Appeals, Sixth Circuit, in the case of *Wiener* v. *Weiss*, 27 Fed. (2d) 200, and urges that the decision therein is conclusive of the issues in this proceeding. The Commissioner, on the other hand, takes the position that the Board has heretofore decided adversely to the petitioner the identical issues as are herein presented.

In the *Weiner* case, *supra*, the facts were these:

Plaintiff in error [Wiener] was engaged in the business of holding property under long-term leases and subletting it for shorter terms for occupancy by or under sub-tenants. In his income tax returns for 1918, 1919, and 1920, he claimed allowances for exhaustion, wear and tear of thirteen buildings held by him under ninety-nine year leases, renewable forever. His claims were disallowed. * * *

The leases required the lessee to maintain on the premises buildings of the fair cost or value of not less than a stipulated amount (in some cases greater and in none less than the value of the existing buildings) to keep the buildings in "like condition as the same now are in," and in case of their destruction or removal from any cause, to replace them with buildings of the fair cost or value of a stated sum (equal to or greater than the value of the existing buildings). In some of the leases there were convenants to erect new buildings at future dates. * * * the lessee, however, had invested nothing in new buildings, and the only expenditures that he had made on those that were on the premises when they were leased were for rents and repairs. These expenditures were deducted from his taxable income for the years in which they were made.

The court, in holding that Wiener, the lessee, was entitled to deductions for depreciation of the leased property, stated:

The Revenue Act under which these taxes were levied permits the taxpayer, in computing net income, to set aside, tax free, "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." Comp. St. Sec. 6336⅛ g. The language of this provision would seem to prescribe but two requisites to the right of a taxpayer to this allowance: One is that the property shall have been used in his business; and the other that he is the one who must suffer and bear the burden of the loss or depreciation. This also seems true from the further point of view that the purpose of the Revenue Act is to tax only gain, and the amount thus allowed to be set aside is not gain, but is capital which has gone into gross income. *United States* v. *Ludey*, 274 U. S. 295 [6 Am. Fed.

Tax Rep. 6754]. Whether it is the capital of the one who has used the property in his business or of some one else, depends, of course, upon the environal facts. It is not necessarily the capital of the holder of the legal title, who, as in this case, may be protected by the undertakings of the lessee; nor is it the capital of a user who is under no obligation to make restitution. It is, it seems to us, the capital of the one who is responsible for the property—the owner or the person responsible to the owner for it—and who also uses and consumes it in his business; and that means of course that one may not have the legal title, or may not have paid anything for the property, and still have the right to this capital deduction, since he may have an equitable interest as valuable as the property itself, or may be so obligated to the holder of the legal title to maintain or restore the property that the investment becomes his own. This is the situation of the lessee in these cases. He is responsible for the buildings, must keep them in the condition in which they were when he took the leases, and if they are consumed, as they will be in his business, or are destroyed or removed, he must replace them. For every practical purpose they are his buildings, and in our opinion they are his capital so far as they are consumed in his business.

\*　　\*　　\*　　\*　　\*　　\*　　\*

The Board has heretofore decided, however, that a taxpayer operating under a lease, who had no capital investment in the chattels under lease, had no basis for an allowance for wear, tear and exhaustion. *William J. Ostheimer*, 1 B. T. A. 18; *Belt Railway of Chicago*, 9 B. T. A. 304. In those cases, just as in the case before us, the leases expressly bound the lessee taxpayers to maintain the chattels, supplies and equipment under the lease " so that on the termination of this agreement the business and property \* \* \*, or its fair equivalent, can be returned in first class order and condition." It was apparent in those cases, as in this, that the chattels under lease could not be maintained and returned to the lessor in first class order and condition, except by renewals and replacements. In those cases, as in this, the taxpayers kept their books on an accrual basis. In *William J. Ostheimer*, *supra*, the Board said:

In order that an item may be accrued, however, a liability must actually be incurred in the taxable year. *Schuster & Co., v. Williams*, 283 Fed. 115. The statute recognized the accrual basis of making returns by providing for the deduction of expenses *incurred* but not paid. It is apparent that no liability *in praesenti* was incurred under the terms of the lease in question in the years 1918 and 1919 however well known it might have been that a liability in some amount would be incurred at some time in the future. The liability to restore chattels as good as new or as good as when received when a lease is ultimately canceled or surrendered at some indefinite or indeterminate time in the future is not a present actual liability, and is not the actual incurring of an expense or liability.

\*　　\*　　\*　　\*　　\*　　\*　　\*

In the case of a lessee of chattels who is required by the terms of the lease to make such renewals or replacements as are necessary to keep the property in

as good condition as when received as additional rental or as a condition to the continued use of the property to which he has no title and is acquiring none, they are deductible, if at all, as expenses paid or incurred in carrying on a trade or business. Reserves for future unincurred expenses are not allowable as deductions under the Revenue Act of 1918.

And in *Belt Railway Co. of Chicago, supra*, the Board said:

\* \* \* The petitioner had no cost or capital investment in connection with the leased rolling stock. Whatever liability it may have had with respect to such chattels, it was a future, not a present liability. The petitioner's original capital would have remained unimpaired even though this depreciation reserve had not been established. We therefore sustain the Commissioner in his disallowance of the depreciation reserve. \* \* \*

It will be observed that petitioner herein, as in the *Ostheimer* and *Belt Railway Co. of Chicago* cases, seeks to set up a depreciation reserve based upon the cost of the chattels to the lessor although the replacement cost thereof may, depending upon future events, be greater or less than the cost to the lessor. In this respect, there is, in our opinion, a material difference in the *Wiener* case *supra* in that Wiener was bound by the lease to replace property of the same " fair cost or value " as distinguished from the replacement of the " same property " which might or might not entail the same cost. In other words, in the *Wiener* case a depreciation reserve was set up based upon a *known* replacement cost whereas in this proceeding the replacement cost must, of necessity, remain unknown until such time as the property is replaced.

The Board is of the opinion that the rule laid down in the *Ostheimer* and *Belt Railway Co. of Chicago* cases, *supra*, is correct and that there is no statutory authority for the maintenance of a depreciation reserve by the petitioner in the circumstances of this proceeding. Accordingly, the Commissioner's action in disallowing the deductions for depreciation for the years 1922 and 1923 is sustained.

The disposition in 1922 for $240 of certain of the leased assets listed at $1,167.21 may or may not involve a loss to petitioner. This property represented no investment to it, but only a contract obligation to replace it with like property. It is obvious, of course, that until petitioner replaced the property sold in 1922 it is utterly impossible to determine the replacement cost thereof. It is possible that the property sold might be replaced for less than the selling price. The Commissioner is sustained in his disallowance of the alleged losses as deductions from gross income.

Reviewed by the Board.

*Judgment will be entered for respondent.*

SMITH, TRUSSELL, PHILLIPS, and GREEN dissent.