Thomas B. Moreland Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 18367.   Promulgated June 3, 1929.

*W. D. McBryar, Esq.,* for the petitioner.
*A. H. Fast, Esq.,* for the respondent.

**OPINION.**

SMITH: The first point made by the petitioner is that it is a personal service corporation within the meaning of section 200 of the Revenue Acts of 1918 and 1921. This section defines a personal service corporation as follows:

The term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits, or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

The evidence shows that the entire capital stock of the petitioner was owned by three individuals all of whom devoted their entire time to its business. The petitioner meets all the tests of a personal service corporation, unless it be that capital was a material income-producing factor in the earning of the income. The petitioner contends that capital was not an income-producing factor by reason of the fact that no merchandise was sold by the petitioner except in connection with its undertaking business. The petitioner was not a dealer in merchandise in the sense that it sold caskets or other merchandise to other undertaking concerns or to any person desiring to purchase such merchandise. This does not mean, however, that the petitioner did not make a profit upon the merchandise sold in connection with a funeral. Persons desiring the services of the petitioner selected a casket according to their requirements. We are of the opinion that capital was a material income-producing factor in the production of net income. The fact that the petitioner did not make a business of dealing in caskets is not determinative of the issue. The balance sheets of the petitioner as of the close of the years 1919, 1920, and 1921 showed that it had inventories of $26,424.31, $31,831.20, and $20,101.27, respectively. The petitioner also had equipment, including motor equipment, of $29,888.50, $27,787.64,

and $29,101.76 at the close of each of the years 1919 to 1921, inclusive. The petitioner's cost of goods sold for 1920 and 1921 was $55,012.17 and $52,640.53, respectively. Capital was necessarily used in the acquisition of hearses and other equipment of the petitioner. In reality a charge was made for the use of the hearses, even though it was not billed separately to the client. The petitioner owned securi-ties from which an income was received. The amount of the securi-ties held at the close of 1920 and 1921 was in excess of $50,000. We are therefore of the opinion that the petitioner has not sustained the burden of proving that capital was not a material income-producing factor in the production of its income and that it is therefore not entitled to personal service classification. Cf. *H. F. Suhr & Co.*, 5 B. T. A. 95; *Johnson Undertaking Co.*, 8 B. T. A. 1182.

Petitioner also alleges that in the computation of its net income the respondent has erred in disallowing a portion of the amounts claimed as a deduction for depreciation on physical assets and also in disallowing an amount representing an exhaustion of its leasehold. Petitioner has, however, offered no evidence to prove error on the part of the respondent in disallowing a part of the depreciation on physical assets taken. There is no evidence as to the rates allowed by the respondent in determining depreciation and we have no evi-dence that the value of the physical assets at the date taken over by the petitioner was in excess of the cost to Thomas B. Moreland when he acquired them in the conduct of his individual business. The petitioner strongly contends, however, that the leasehold acquired by the petitioner at June 1, 1917, had a fair market value on that date of $14,000; that the lease ran for a period of only six years; and that therefore it is entitled to exhaust the value of the leasehold at the date of acquisition over the life of the lease. We are of the opinion, however, that there is no merit in this contention. The lease was entered into by Moreland with the corporation after the organization of the corporation. It was not a lease in existence before the organization of the corporation which was paid into the corporation in exchange for a given amount of capital stock. The petitioner had no capital invested in the lease. It therefore had no capital which exhausted with the expiration of the lease. The provision of the statute permitting the deduction of depreciation and exhaustion is for the purpose of returning to the petitioner its capital investment in an asset. *United States* v. *Ludey*, 274 U. S. 295; *Weiss* v. *Wiener*, 279 U. S. 333. Upon the evidence of record the disallowance of deductions for depreciation and exhaustion of the leasehold made by the respondent are sustained.

The petitioner further contends that the respondent erred in his determination of invested capital by excluding from it $37,303.97

claimed by the respondent to represent an appreciation of the value of assets at the time of the transfer of the assets of the individual business of Thomas B. Moreland to the petitioner corporation. The petitioner has introduced no evidence that the fair market value of the tangibles paid in to the petitioner corporation was in excess of the amount determined by the respondent, which was the cost to Thomas B. Moreland. The petitioner contends, however, that it was the intention of the petitioner to pay in to the corporation good will of the predecessor business and that that good will was much in excess of $37,303.97; that in any event the petitioner should be entitled to include in invested capital $100,000 for the value of the assets paid in and not $62,696.03, the amount allowed by the respondent. Section 331 of the Revenue Acts of 1918 and 1921 is a complete bar to the inclusion of any portion of the $37,303.97 contended for. Even though the good will of the individual business was worth $37,303.97 or an amount much greater than that—which we believe to be the fact, nevertheless, the evidence does not prove that this good will was obtained by Moreland at an outlay of a single penny. Under section 331 the asset consisting of good will can not be included in the invested capital at an amount in excess of the cost to Moreland. This observation applies equally to the alleged value of the leasehold and to the alleged value of the good will. The exclusion by the respondent of $37,303.97 from the petitioner's invested capital is sustained.

The final point made by the petitioner is that there are abnormalities with respect to its income and invested capital for the taxable years which warrant the determination of its tax liability under the provisions of section 328 of the Revenue Acts of 1918 and 1921. We can not upon the record find any abnormality in the net income. It is true that the rental charged the petitioner under its lease with Thomas B. Moreland was somewhat less than would have been charged by Moreland to another tenant. But the petitioner paid only the rental that was charged and the amount paid was allowed as a deduction from gross income. We are of the opinion, however, that there was an abnormality in the invested capital of the petitioner. The good will of the individual business of Moreland was undoubtedly very valuable. The petitioner computes the value by using a 10 per cent return upon the tangibles and allocating the balance of the earnings to the good will at an amount of several hundred thousand dollars. Although we are not persuaded that the amount is as great as the amount claimed, we are of the opinion that the value was as great as the amount of the entire capital stock of the petitioner. Although the mere fact that the invested capital of a corporation is subject to the limitation prescribed by section 331 of the Revenue Acts of 1918 and 1921, does not of itself entitle the cor-

poration to assessment under section 328—*Insley Mfg. Co.*, 1 B. T. A. 1029; *Morris & Co.*, 1 B. T. A. 704; *Symington-Anderson Co.*, 8 B. T. A. 132; *Powell Coal Co.*, 12 B. T. A. 492, nevertheless, the abnormality occasioned thereby may be of such magnitude as to warrant assessment under section 328. In *Roslyn Fuel Co.*, 16 B. T. A. 285, we said:

It is true that we have held that the mere fact of statutory exclusion of values from invested capital does not indicate an abnormality, yet, where, as in *Clarence Whitman & Sons*, 11 B. T. A. 1192, and *Rothschild Colortype Co.*, 14 B. T. A. 718, there is thereby created an abnormality affecting invested capital and income, the petitioner is entitled to special assessment. * * *

We do not think that this is a case of a tax being high " merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital." Section 327(d) of the Revenue Acts of 1918 and 1921. The statutory invested capital of the petitioner was abnormally low. We are of the opinion that the petitioner is entitled to have its tax liability for the years in question determined under the provisions of section 328. Further proceedings will be had under Rule 62(c) and (d).

Reviewed by the Board.

MARQUETTE and MURDOCK dissent.

PHILLIPS, dissenting: I am of the opinion that the preponderance of the evidence establishes that the petitioner was engaged primarily in rendering personal service and should be classified as a personal service corporation under section 200. While capital was necessary and was used, its use impresses me as incidental or subordinate to the personal service rendered.

Both the courts and this Board have pointed out that a corporation may be within section 200 though capital is necessary to the transaction of its business. Capital must be a " material income-producing factor " if the corporation is to be held to fall outside the personal service classification. The extent to which capital may be used without becoming " a material income-producing factor " is not susceptible of precise measurement. Each case must be considered on its own facts. Here the income was $183,000 and $162,000 for the years 1920 and 1921, respectively. The capital actually employed was approximately $100,000 and one-third of this represented credit extended. There can be no question that the services performed were personal in character. Granting a most liberal return on the capital employed, the great bulk of the income must be attributed to some cause other than the use of capital. The majority opinion apparently assigns this to good will. But in such a business as that in

which the petitioner is engaged, good will can be built up and maintained only by satisfactory personal service. The recognition of such a substantial good will value as to create an abnormality when excluded from invested capital seems to me a recognition of the overwhelming part which personal service played in the production of income.

Upon the record as a whole I am of the opinion that petitioner was engaged in the rendition of a personal service; that the use of capital, while necessary, was incidental to the service rendered and was not a material income-producing factor and that petitioner should be classified as a personal service corporation.