FRANKLIN LUMBER & POWER CO., PETITIONER, *v.* COMMISSONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19978.   Promulgated February 17, 1930.

*J. H. Bridgers, Esq.,* for the petitioner.
*W. R. Landsford, Esq.,* for the respondent.

OPINION.

TRAMMELL: In this proceeding we are called upon to determine the amount of the profit or loss resulting from the sale by the petitioner

of its electric light plant and transmission equipment. The amount received for the property in 1923 and the amount of allowable depreciation taken by the petitioner in its returns are not in controversy. While counsel for the petitioner stated at the hearing that there was no question as to what the property cost in 1912, his brief does not indicate that he has acquiesced in the cost. Both parties, however, have accepted the cost of the property in 1912 as being the March 1, 1913, value thereof.

The petitioner's secretary and treasurer, who was also the general manager of operations, testified that in 1912 the petitioner put into the electric light plant "$8,000 of capital," money raised from the sale of $8,000 par value of capital stock and $5,000 borrowed from a stockholder. Only $8,000 par value of capital stock was ever issued. Other testimony of the witness shows that the petitioner acquired the lumber plant at a cost of $4,000, of which $1,500 was paid in cash and the remainder was paid by the issuance of $2,500 par value of the petitioner's capital stock. As the lumber-manufacturing plant was acquired about the time of organization, and as there is nothing in the record to show that the petitioner had a paid-in surplus, it would appear that the $1,500 represented money obtained from the sale of capital stock.

The petitioner was just beginning business in 1912 and had to have working capital or money to defray operating expenses. The return for 1912 shows expenses, losses, interest and taxes totaling $3,024.36. Whether all or any portion of this amount was paid from the proceeds obtained from the sale of capital stock the record does not show. We think the $5,000 of borrowed money and a portion of the proceeds from the sale of the capital stock was expended in the construction of the electric light plant, but in view of the state of the record we are unable to determine what amount from the sale of capital stock was expended for such purpose. Inasmuch as the respondent determined a cost or a March 1, 1913, value, considering them the same, of $9,000 in computing the profit on the sale of the property, we are unable to find anything in the record to warrant an increase in said amount over that found by the respondent. His determination in this respect is accordingly approved.

The petitioner contends that the total amount of net income shown on its returns from 1912 to 1922 less the dividends paid during the years 1917 through 1922 was expended in extensions or additions to its lines. The total net income shown for the period 1912 through 1922 was $11,072.13. The return for 1913 shows a loss of $852.50. Reducing the $11,072.13 by $852.50 leaves the amount of $10,219.63 as the net income for the 11-year period. Dividends of $800 a year for six years amount to $4,800. Deducting this amount from the

$10,219.63 leaves a remainder of $5,419.63, which, if the petitioner's contention is correct, was expended for additions or extensions to its electric light property. We have found from the evidence that some of the profits of previous years were used for operating expenses in other years and part of them were used to purchase additional equipment for the extension of the petitioner's lines into the surrounding territory. The testimony respecting the expenditures for additions and extensions is indefinite and uncertain. While it indicates that a part of the profits was used for extensions and additions, there was no testimony as to any definite amount being expended for such purposes. We are unable to find that more than $1,000 was so used.

The petitioner's returns from 1914 through 1923 show that the petitioner took as deductions for the respective years depreciation totaling $5,050. These were allowed by the respondent. At the hearing counsel for the petitioner admitted that there was no question as to the depreciation. However, in his brief he states the amount was $3,550 and contends that in determining the profit or loss on the sale of the property that amount should be reduced by $2,150 representing the total amount of depreciation taken by the petitioner in its returns for the years 1915, 1919, 1921, and 1922, when it did not have sufficient income to be subject to tax.

The evidence is clear that the petitioner's allowable deductions for depreciation amounted to $5,050. We think the contention that in determining the profit from the sale of the property the total depreciation taken should be reduced by the amount taken on the returns for the years when the petitioner did not have sufficient income to be subject to tax must be denied. *Hardwick Realty Co.*, 7 B. T. A. 1108; affd., 29 Fed. (2d) 498; certiorari denied, 279 U. S. 876. See also *Parkersburg & Marietta Sand Co.*, 11 B. T. A. 87; *United States v. Ludey*, 274 U. S. 295. The total amount of the depreciation should therefore be taken into consideration in computing the profit or loss from the sale.

From the evidence in the case, we think the petitioner realized from the sale of its property in 1923 a net profit of $12,050, which is computed as follows:

| | |
|---|---:|
| March 1, 1913, value of property acquired in 1912 which value is not less than cost | $9,000 |
| Additions and extensions | 1,000 |
| Total | 10,000 |
| Depreciation 1914 through 1923 | 5,050 |
| Depreciated cost of property | 4,950 |
| Selling price in 1923 | 17,500 |

Less:

    Expenses of sale_____ $500

    Depreciated cost of property_____ 4, 950

                                                                  5, 450

                                                                12, 050

*Judgment will be entered under Rule 50.*