PITTSBURGH BREWING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 83386, 88626.   Promulgated March 3, 1938.

*Aaron Holman*, Esq., and *I. Newton Brozan*, Esq., for the petitioner.

*Edward A. Tonjes*, Esq., and *H. P. Miller*, Esq., for the respondent.

442

**OPINION.**

STERNHAGEN : The petitioner complains of three errors charged to the respondent in the determination of the deficiencies for the fiscal years 1933 and 1934. These, however, all turn upon the proper use or recognition to be given to the depreciation of petitioner's several plants in the years beginning 1920. The depreciation actually accounted for by the petitioner and deducted on its annual returns was computed without regard to such obsolescence as in 1918 and 1919 was properly attributable to the Prohibition Amendment, which became effective January 29, 1920. See *Burnet* v. *Niagara Falls Brewing Co.*, 282 U. S. 648. Notwithstanding the fact that the petitioner had pending a claim with the Commissioner for large deductions in those years because of such obsolescence, its depreciation was computed, accounted for, and deducted irrespective of such obsolescence. The depreciation deductions taken on the returns were not disputed by the Commissioner, and remained throughout all the prohibition years undisturbed. During the years 1920–1925, the

depreciation deductions were substantial and applied to both the operating and inactive plants; after 1925, depreciation was no longer either recognized on the accounts or taken in the returns in respect of the nonoperating plants. The petitioner now claims that the recognition by the stipulation of 1932 of prohibition obsolescence for the years 1918 and 1919 requires a reduction *pro tanto* of the depreciation base of its plants, a reduction in the depreciation of all of the intervening years, and a higher remaining base at the beginning of 1933 which mathematically results therefrom. Essentially, therefore, the question is whether the petitioner's base for 1933 and 1934, both for depreciation and for the computation of its gain upon properties sold, shall be computed with reference to the depreciation sometimes actually deducted and sometimes properly deductible on its returns for prior years, as the respondent contends, or with reference to a corrected intervening depreciation computed as if the stipulated obsolescence deduction had actually been used in 1918 and 1919 and recognized thereafter.

The petitioner constructs an elaborate argument upon the Supreme Court's discussion of the general principles of depreciation in *United States* v. *Ludey*, 274 U. S. 295. That opinion involved a consideration of the Revenue Act of 1916, and the Court held that in the absence of an express statutory provision, "Congress doubtless intended" that the basis for determining the gain from the sale of a wasting asset should be determined upon a cost reduced by the depreciation sustained. The legislative intent in that case had not been expressed in the statute, and the Court was therefore required to make a judicial inference. Cf. *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301. But the present case is controlled by the Revenue Act of 1932, which, in section 113 (b) (1) (B), provides that adjustment of the basis for gain or loss upon the sale of property shall in all cases be made "in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws." There is no room for doubt, therefore, that the basis for gain or loss as well as the basis for future depreciation (which are identical, section 114 (a), Revenue Act of 1932), must be adjusted by the intervening deductions allowable by law or any greater allowances which may in fact have been taken. Thus Congress has foreclosed any discussion of a theoretical computation of depreciation which might have been provoked by the opinion in the *Ludey* case.

The petitioner, however, points to the fact that the depreciation deductions taken by it upon its earlier returns were wholly ineffective because its losses otherwise determined exceeded its gross income. Since, therefore, no tax was due from it in any event, the petitioner argues that no depreciation deductions have been "allowed", and

hence the provision of 113 (b) (1) (B) is beside the point. This contention is not new. It has been considered and rejected, *Hardwick Realty Co.* v. *Commissioner*, 29 Fed. (2d) 498; dismissed, 279 U. S. 876; *Franklin Lumber & Power Co.*, 18 B. T. A. 1207; 50 Fed. (2d) 1059. In *United States Trust Co. of New York et al., Trustees*, 31 B. T. A. 54, the Board said:

\* \* \* If deductions for exhaustion, wear, and tear have been *allowable in respect of such property* since its acquisition by the taxpayer, all of those deductions must be used to diminish the basis. Cf. *United States* v. *Ludey*, 274 U. S. 295; *Fidelity-Philadelphia Trust Co.* v. *Commissioner*, 47 Fed. (2d) 36, affirming 18 B. T. A. 43. Thus it matters not that there was no income to be offset by the deductions allowable \* \* \*.

If there were any doubt as to the legal effect of the statutory language, the intention is made clear by the discussion appearing in the Report of the Senate Finance Committee, set forth in the margin.[1]

The evidence contains various mathematical computations of the parties and there seems to be no dispute as to the mathematical application of the principle which should be applied. There appears to be agreement as to the depreciation deductions actually taken and, therefore, to be regarded as allowed, during the period 1920–1925, and that these amounts are no less than the amounts properly allowable. There appears to be no disagreement as to the amounts which for the years 1926–1931 were properly allowable, although not in fact deducted, and also as to such amounts within this latter period as were in fact deducted and allowed. For 1932 the petitioner computed the depreciation upon its operating plant upon a basis reduced by the stipulated obsolescence. The principle of this is not disputed by the Commissioner.

---

[1] SECTION 113 (b) (1). ADJUSTED BASIS

\* \* \* \* \* \*

In subparagraph (B), relating to depreciation, etc., for the period since February 28, 1913, the bill requires that adjustment be made "to the extent allowed (but not less than the amount allowable)" instead of "by the amount \* \* \* allowable" as in the prior act. The Treasury has frequently encountered cases where a taxpayer, who has taken and been allowed depreciation deductions at a certain rate consistently over a period of years, later finds it to his advantage to claim that the allowances so made to him were excessive and that the amounts which were in fact "allowable were much less. By this time the Government may be barred from collecting the additional taxes which would be due for the prior years upon the strength of the taxpayer's present contentions. The Treasury is obliged to rely very largely upon the good faith and judgment of the tax payer in the determination of the allowances for depreciation, since these are primarily matters of judgment and are governed by facts particularly within the knowledge of the taxpayer, and the Treasury should not be penalized for having approved the taxpayer's deductions. While the committee does not regard the existing law as countenancing any such inequitable results, it believes the new bill should specifically preclude any such possibility. Your committee has not thought it necessary to include any express provision against retroactive adjustments of depreciation on the part of the Treasury as the regulations of the Treasury seem adequate to protect the interests of taxpayers in such cases. These regulations require the depreciation allowances to be made from year to year in accordance with the then known facts and do not permit a retroactive change in these allowances by reason of the facts developed or ascertained after the years for which such allowances are made. \* \* \* [Report No. 665, 72d Cong., 1st sess., p. 29.]

In the respondent's determination, however, appears a clear error. There was no composite depreciation used, and in a method of depreciating specific groups of assets there is no justification for applying the excessive amount computed as to one asset or group so as to reduce the basis of another. This the Commissioner has done, as shown by the findings, and the error must be corrected in a recomputation. It is manifest also that in such a system of specific depreciation the Commissioner may not reduce the basis of an asset in 1933 by applying an alleged figure of depreciation for a period prior to the acquisition of the specific asset in question. This error also must be corrected in a recomputation.

One of the results of the last mentioned error of the Commissioner is the occasion for the petitioner's third complaint. The insurance of $1,500 received by the petitioner as a result of the Keystone fire has been treated by the Commissioner as income in its entirety because the Keystone plant appeared by his computation to have been entirely exhausted by depreciation. Such apparent complete exhaustion was, however, only the result of improperly applying depreciation of other properties to the Keystone plant. But at the time of the receipt of the insurance, the Keystone plant was not yet fully depreciated, and the insurance received should properly be applied against the remaining undepreciated base. No part of it is to be included in the petitioner's income for the taxable year.

In summary, it results from this opinion that a recomputation should be made in which the basis of petitioner's properties in 1933 and 1934, both for the current deductions for depreciation and for the determination of gain upon such properties as were sold, shall be found by applying against the cost or properly adjusted basis all of the deductions taken by the petitioner on its returns, but not less than the amounts properly allowable where no deductions were actually taken; that such deductions are to be applied only against the specific assets depreciated and may not be shifted to other assets; that no depreciation for the purpose of reducing the basis in 1933 and 1934 may be recognized for any period prior to the acquisition of the specific asset in question; and that the Keystone insurance is to be applied to reduce the basis properly computed as above set forth and not to be treated as additional income.

The stipulation as to the allowance of petitioner's bad debt deduction should be taken into account in the recomputation.

*Judgment will be entered under Rule 50.*