COMPUTING & SOFTWARE, INC., SUCCESSOR BY MERGER TO COMPUTER CREDIT CORPORATION, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4008-72, 4009-72, 8184-74.   Filed March 22, 1976.

*Mark Townsend,* for the petitioners.
*Stephen W. Simpson,* for the respondent.

### SUPPLEMENTAL OPINION

FEATHERSTON, *Judge:* The original opinion in this case (64 T.C. 223) was filed May 15, 1975. Petitioners have raised an objection to respondent's computations for entry of decisions pursuant to that opinion. The issue is whether, under section 1016(a)(2)(B),[2] petitioners' basis for a certain purchased credit file should be adjusted for the full amount of the depreciation allowed for 1965, prior to the period in controversy, or for only a proportionate part thereof.

On December 17, 1964, Consumer Credit Clearance, Inc. (hereinafter referred to as CCC), purchased a credit information business from Hughes Dynamics, Inc., for a purchase price of $2,050,000. Of that amount, $1,715,000 was allocated by petitioners (then CCC) to the cost of a credit information file and $173,982.51 to the cost of goodwill. On its Federal income tax return for 1965, CCC claimed a depreciation deduction of

---

[1] Cases of the following petitioners are consolidated herewith: Computing & Software, Inc., successor by merger to Computer Credit Corporation, docket No. 4009-72, and Cordura Corporation, formerly Computing & Software, Inc., successor by merger to Computer Credit Corporation, docket No. 8184-74.

[2] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

$423,850, based on its use of $1,715,000 as the basis for the file. Due to losses sustained in 1964 and 1965, only $276,768 of the deduction resulted in a tax benefit, and respondent did not disallow the deduction claimed for 1965.

In our original opinion, we reallocated the purchase price among the principal assets purchased on December 17, 1964. Of the $1,715,000 claimed by petitioners as the basis for the credit file we allocated $1 million to the cost of purchasing the file and the remaining $715,000 to the cost of goodwill. We also held that the credit file had a useful life of 6 years and that only the straight-line method of depreciation could be employed. Accordingly, the amount allowable as an annual depreciation deduction is $166,666. The issue is whether petitioners' basis for the credit file should be reduced by $276,768, the amount of the 1965 claimed deduction which resulted in a tax benefit, or $166,666, the amount allowable each year under our allocation of the purchase price.

Section 167(g) provides that a taxpayer's basis for depreciation purposes is governed by section 1011. The latter section provides that the basis of property is its cost, see sec. 1012, as adjusted pursuant to section 1016. Section 1016 requires, among others, the following adjustment to basis:

(a) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—
 * * *
 (2) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount—
  (A) allowed as deductions in computing taxable income under this subtitle or prior income tax laws, and
  (B) resulting (by reason of the deductions so allowed) in a reduction for any taxable year of the taxpayer's taxes under this subtitle (other than chapter 2, relating to tax on self-employment income), or prior income, war-profits, or excess-profits tax laws,

but not less than the amount allowable under this subtitle or prior income tax laws. * * *

It is thus necessary to adjust the $1 million cost basis of the credit file by the amount of the 1965 depreciation allowed or allowable, whichever is greater, in order to ascertain the adjusted basis for depreciation in the period at issue.

In his computations, respondent treated $276,768 as the "amount allowed" as depreciation within the meaning of section

1016(a)(2)(B) and section 1.1016-3(e), Income Tax Regs., in respect of the credit file. Since that amount exceeded the amount allowable as a deduction ($166,666), respondent reduced petitioners' basis by the full $276,768.

Petitioners contend that the $276,768 deduction was allowed (erroneously) with respect to the credit file *and* the goodwill purchased on December 17, 1964, because the deduction was derived from a basis ($1,715,000) which we have held included part of the cost of goodwill. Petitioners advocate allocation of only a portion of the $276,768 figure to the amount allowed as a deduction with respect to the file.[3] That portion is lower than the $166,666 allowable. Therefore, petitioners assert, the basis of the file should be reduced by the lower amount allowable, leaving a greater basis for depreciation in later years.

We think respondent's computations accord with the statute. The record clearly demonstrates that the "amount allowed," $276,768, was "allowed" as a depreciation deduction for the credit file and not for goodwill. Petitioners allocated $1,715,000 to the cost of the file and computed a depreciation deduction accordingly. The basis and deduction in respect of the file were reported as such on CCC's tax return. The error in that depreciation deduction was not in permitting a deduction for the depreciation of goodwill, an intangible asset with an indefinite useful life, but rather was in allocating too much of the purchase price to the credit file, the depreciable asset. Cf. *Rainier Brewing Co.,* 7 T.C. 162 (1946), affd. per curiam 165 F.2d 217 (9th Cir. 1948). Section 1016(a)(2)(B) thus requires petitioners' basis in the credit file to be adjusted by the amount of the depreciation deduction taken by petitioners, to the extent that it benefited them taxwise.

The cases cited by petitioners do not support their position. In *Hoboken Land & Improvement Co. v. Commissioner,* 138 F.2d 104 (3d Cir. 1943), affg. 46 B.T.A. 495 (1942), the taxpayer erroneously added the cost of land, a nondepreciable asset, to a

---

[3] Petitioners would allocate to each asset that part of the depreciation deduction allowed for 1965 which bears the same ratio to the total deduction as the redetermined basis of the asset bears to the total basis for both assets. Thus, under petitioners' contention, the ratio applicable to the file would be:

$$\frac{1,000,000}{1,715,000} \times 276,768 = 161,381$$

depreciable class of property, "Piers and Waterfronts." The resulting depreciation deduction exceeded the cost of the depreciable property. The court held that the Government was misled and was unaware that the value of land was included in the group of depreciable assets. The court stated (138 F.2d at 107) that—

land was not a depreciable asset. The claimed depreciation was allowed as it actually appeared to have been sustained [by respondent's auditor on the taxpayer's return], on buildings and structures only. * * *

The same may be said in the instant case. Respondent "allowed" a depreciation deduction for the credit file, as claimed on petitioners' tax return, but not for goodwill, a nondepreciable asset.

Nor does *Pittsburgh Brewing Co.,* 37 B.T.A. 439 (1938), revd. on other grounds 107 F.2d 155 (3d Cir. 1939), also cited by petitioners, aid their cause. In that case, there were two separate classes of depreciable property. Excessive depreciation was allowed for one such class, and this Court held that excess could not be used to reduce the unexhausted basis of property in another separate class. Petitioners claim that the reduction of the basis of the credit file for erroneous excessive depreciation allowed in respect of goodwill does violence to the holding of *Pittsburgh Brewing Co., supra.* However, the factual premise of petitioners' argument is lacking. In the instant case, depreciation was allowed only for the credit file. There was no depreciation of goodwill, excessive or otherwise, to which the holding of *Pittsburgh Brewing* would apply.

*Decisions will be entered accordingly.*