THE DETROIT EDISON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103379. Promulgated October 14, 1941.

*Edward H. Green, Esq.*, and *Harvey A. Fischer, Esq.*, for the petitioner.

*Paul A. Sebastian, Esq.*, for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of deficiencies in income tax for the years 1936 and 1937 in the amounts of $4,031.04 and $6,267.94, respectively. The single issue raised is whether the respondent erred in disallowing deductions for depreciation in the respective amounts of $40,273.11 and $41,786.26 for the taxable years.

All of the facts material to the issue are covered in a signed stipulation of facts which we adopt as our findings of fact.

The petitioner is a corporation, organized and existing under and by virtue of the laws of the State of New York, but duly admitted and licensed to do business in the State of Michigan. It filed its income tax returns for 1936 and 1937 with the collector at Detroit, Michigan.

The petitioner is a public utility corporation engaged, among other things, in the generation and sale of electric energy in the city of Detroit, Michigan, and surrounding territory, and operates under the jurisdiction of the Michigan Public Service Commission.

Petitioner, in connection with the distribution and sale of electric energy, from time to time receives applications for the extension of its transmission or distribution lines to places which in the opinion of the petitioner are situated too far from existing transmission or distribution lines to warrant the expenditure of amounts necessary to make such extensions.

Upon payment by the applicant of a sum fixed by the petitioner, the latter agrees in writing to make the necessary expenditures for the construction of the desired line extension. The agreement between the petitioner and each applicant is evidenced by one of five types of agreements, copies of which are made a part of the stipulated facts.

The petitioner has from time to time required the applicant to pay varying sums ranging from $500 per mile to $1,500 per mile of line extension. These amounts as fixed by the contracts represent the estimated cost per mile of line construction.

The amount of the payment made by the applicant is the estimated cost, and not the actual cost, but it never exceeds the actual cost of constructing the requested line extension, and no increase or decrease is made in the amount fixed in the contract upon the completion of the line extension by reason of the actual cost thereof. The amount paid by the applicant is in all cases final as to such applicant. The applicant may, however, in accordance with the agreement in writing providing for refunds, become entitled to receive all or part of such payment upon the happening of the events provided for therein.

The material and property used in the construction of the line extension and the cost of labor are in all cases paid from the general working funds of the petitioner. The records of the petitioner set forth and identify all work performed and to be performed under the provisions of any given contract.

Upon the completion of the line extension, the petitioner, in accordance with standard practice, enters upon its books as a "property item" (such as poles, lines, etc.) the cost of the line extension, including labor and material, and does not subtract from that sum the amount of the payment made by the applicant.

Depreciation is claimed by the petitioner for income tax purposes for the years 1936 and 1937 upon the cost to the petitioner thus arrived at, at rates approved by the Commissioner.

The cash payment made by the applicant in those contracts providing for refunds is not earmarked for the building of any given line extension, but upon its receipt becomes a part of the free working capital of the petitioner. The cash account is debited with the full amount of the payment and a like amount is credited to a liability account entitled "Customers' Deposits for Line Extensions", classified under account No. 261, "Miscellaneous Unadjusted Credits", as re-

quired by the Uniform Classification of Accounts for Electric Utilities prescribed by the Michigan Public Service Commission. After the expiration of the period during which refunds may be made to the customers under the terms of the written contract pursuant to which line extensions have been constructed, petitioner is then required by account No. 255 to transfer the unrefunded balance, if any, from account No. 261, "Miscellaneous Unadjusted Credits", to account No. 255, "Contributions for Extensions." With respect to those contracts which do not provide for refunds, the cash payments are debited to cash and credited to account No. "255—Contributions for Extensions."

At the expiration of the five-year period during which refunds may be made to depositors, the petitioner credits to surplus the amount of the unrefunded balance with respect to each agreement expiring during the taxable year. During the years 1936 and 1937 the petitioner thus credited to surplus $36,065.81 and $47,500.67. In its income tax returns for 1936 and 1937 petitioner did not report in taxable income the above amounts credited to surplus. The respondent did not in the determination of the deficiencies subject such sums to Federal income tax.

In lieu thereof the respondent held that the petitioner was not entitled to deduct depreciation upon such part of the cost of line extensions covered by the agreements as was represented by the unrefunded balances of deposits. The unrefunded balances of the deposits at the close of each of the years 1935, 1936, and 1937 were as follows:

| | |
|---|---|
| 1935 | $1,148,679.86 |
| 1936 | 1,184,745.67 |
| 1937 | 1,232,246.34 |

In the determination of the deficiencies the respondent has disallowed a depreciation deduction upon the mean of those balances between the beginning and close of each of the years 1936 and 1937. These media were for $1,166,712.77 for 1936 and $1,208,496.01 for 1937. The depreciation disallowed for 1936 and 1937 was $40,273.11 and $41,786.26, respectively.

In its income tax returns for 1936 and 1937 the petitioner claimed a depreciation allowance upon the total cost of its depreciable properties, including the full amount of the cost of line extensions, a part of which was paid for by its customers. In the determination of the deficiencies the respondent has disallowed depreciation upon such portion of the cost of its depreciable properties as was represented by the unrefunded balances of deposits referred to above.

The respondent's argument is that the petitioner is not entitled to a depreciation allowance except upon the cost of depreciable properties borne by it. He admits that under the principle of *Edwards* v. *Cuba Railroad Co.*, 268 U. S. 628; *Liberty Light & Power Co.*, 4 B. T. A.

155; *Great Northern Railway Co.*, 8 B. T. A. 225; *Frank Holton & Co.*, 10 B. T. A. 1317; and *Baltimore & Ohio Railroad Co.*, 30 B. T. A. 194, the petitioner is not taxable upon the gain realized by it from the unrefunded deposits credited to surplus in 1936 and 1937 of $36,065.81 and $47,500.67, respectively. He contends, however, that if the petitioner is entitled to deduct depreciation upon the cost of extensions borne by its customers it obtains a double benefit, which is not warranted by the statute.

We think that the contention of the respondent upon this point must be sustained. In *United States* v. *Ludey*, 274 U. S. 295, the Supreme Court said:

* * * The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the *original cost.* The theory underlying this allowance for depreciation is that by using up the plant a gradual sale is made of it. The depreciation charged is the measure of the cost of the part which has been sold. * * * [Italics supplied.]

It is fundamental that the depreciation deduction is allowed upon a capital investment. Where a taxpayer has no capital investment in property it is not entitled to a depreciation allowance in respect of the capital asset. The essential requirements of a capital investment are the laying out of money or money's worth and the acquisition of something of permanent use or value in the business. *La Belle Iron Works* v. *United States*, 256 U. S. 377. The mere ownership of property which cost the owner nothing does not give rise to the right of a depreciation allowance.

Petitioner, in effect, claims that we must treat the deposits as mere contributions to its capital, and that the building and ownership of the lines must be treated as a separate transaction. The petitioner's argument is that the statute does not permit us to "trace the funds" with which the power lines were built and that the mere facts that the lines are owned by the company, are used in its business, and have a limited useful life require us to sustain its position. The difficulty with this argument is that it overlooks the very substance of the transactions involved. The contracts can not be broken down as suggested, for they are in essence contracts the very purpose of which is to permit the company to avoid the cost of constructing new lines. If we were to sustain the petitioner's argument it would be to permit the petitioner to recover through depreciation allowances the cost of line extensions which was not borne by itself. The respondent's determination of deficiencies is approved.

*Decision will be entered for the respondent.*