## UNITED STATES *v.* LUDEY.

CERTIORARI TO THE COURT OF CLAIMS.

No. 289. Argued April 21, 22, 1927.—Decided May 16, 1927.

1. Under the income and excess profits provisions of the Revenue Act of 1916, as amended by Revenue Act of 1917, in determining the existence and amount of profit realized from a sale of oil-mining properties—land, leases, and equipment—the cost of the property sold is the original cost to the taxpayer (if purchased after March 1, 1913, or its value on that date if acquired earlier for less) diminished by deductions for depreciation and depletion occurring between the dates of purchase (or March 1, 1913) and sale. P. 300.

2. The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets through wear and tear of the plant used. P. 300.

3. When a plant is disposed of after years of use, the thing then sold is not the whole thing originally acquired. The amount of the depreciation must be deducted from the original cost of the whole in order to determine the cost of that disposed of in the final sale of properties. P. 301.

4. This rule applies to mining as well as to mercantile business. P. 301.

5. The depletion charge permitted as a deduction from the gross income in determining the taxable income of mines for any year represents the reduction in the mineral contents of the reserves from which the product is taken. Because the quantity originally in the reserve is not actually known, the percentage of the whole, withdrawn in any year, and hence the appropriate depletion charge, is necessarily a rough estimate. P. 302.

6. The amounts of depreciation and depletion to be deducted from cost to ascertain gain on a sale of oil properties, are equal to the aggregates of depreciation and depletion which the taxpayer was entitled to deduct from gross income in his income tax returns for earlier years; but are not dependent on the amounts which he actually so claimed. P. 303.

61 Ct. Cls. 126, reversed.

CERTIORARI (271 U. S. 651) to a judgment of the Court of Claims for an amount exacted as additional income and excess profits taxes.

*Mr. T. L. Lewis, Jr.,* Attorney in the Bureau of Internal Revenue, with whom *Solicitor General Mitchell* and *Mr. A. W. Gregg,* General Counsel, Bureau of Internal Revenue, were on the brief, for the United States.

*Mr. Wayne Johnson,* with whom *Mr. Mark J. Ryan* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Ludey brought this suit in the Court of Claims to recover an amount exacted as additional taxes for 1917, under the income and excess profits provisions of the Revenue Act of 1916, September 8, 1916, c. 463, Title I, 39 Stat. 756, 757–759, as amended by the Revenue Act of 1917, October 3, 1917, c. 63, 40 Stat. 300, 329. The tax was assessed on the alleged gain from a sale in 1917 of oil mining properties which had been owned and operated by him for several years. The Commissioner of Internal Revenue determined that there was a gain on the sale of $26,904.15. Ludey insists that there was a loss of $14,777.33. The amount sued for is the tax assessed on the difference. Whether there was the gain or the loss depends primarily upon whether deductions for depletion and depreciation are to be made from the original cost in determining gain or loss on sale of oil mining properties. The question is one of statutory construction or application. The Court of Claims entered judgment for the plaintiff. 61 Ct. Cls. 126. This Court granted a writ of certiorari. 271 U. S. 651.

The properties consisted, besides mining equipment, in part of oil land held in fee, in part of oil mining leases. The aggregate original cost of the properties was $95-977.33.[1] Of this amount $30,977.33 was the cost of the

---

[1] Some of the properties were purchased before March 1, 1913. As to these the term cost is used, throughout the opinion, as mean-

equipment used in the business; $65,000 the cost of the oil reserves. The 1917 sale price was $81,200. For the purpose of determining the cost of the properties sold in 1917 the Commissioner deducted from the original cost $10,465.16 on account of depreciation of the equipment through wear and tear, and $32,258.81 on account of depletion of the reserves through the taking out of oil by the plaintiff, after March 1, 1913. There was no dispute of fact concerning the correctness of the estimates upon which these deductions were made. The finding of the depletion was in accordance with the method of computation employed by the Bureau of Internal Revenue; and there was no objection specifically to the method of computation. But Ludey insisted that the amount of depletion, if any, could not be found or stated as a fact, since, in the nature of the case, it was impossible to determine how much oil was recoverable either when he acquired the properties or when he disposed of them. The finding of the depreciation was, likewise, in accordance with the method of computation employed by the Bureau; and there was no objection to the method of computation. But Ludey insisted also in respect to depreciation that the property was, as a matter of law, unchanged in character and quantity throughout the period of operation.

Until 1924, none of the revenue acts provided in terms that, in computing the gain from a sale of any property, a deduction shall be made from the original cost on account of depreciation and depletion during the period of operation.[2] But ever since March 1, 1913, the revenue

_____

ing their value as of March 1, 1913, that value being higher than the original cost.

[2] The 1924 Act, June 2, 1924, § 202 (b), 43 Stat. 253, 255, provided that in computing gain or loss from sales, adjustment should be made for items of exhaustion, wear and tear, and depletion " previously allowed with respect to such property." See Regulations 65, Arts.

acts have required that gains from sales made within the tax year shall be included in the taxable income of the year, and that losses on sales may be deducted from gross income. And each of the acts has provided that, in computing the taxable income derived from operating a mine, there may be made a deduction from the gross income for the depreciation and that some deduction may be: made for depletion. The applicable provisions of § 5 (a) of the Revenue Act of 1916 concerning deductions to be allowed in computing net income are these:

"Fourth. Losses actually sustained during the year, incurred in his business or trade . . . *Provided,* That . . . the . . . value of . . . property [acquired before March 1, 1913] as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such loss. . . .

"Seventh. A reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business or trade;

"Eighth. (a) In the case of oil and gas wells a reasonable allowance for actual reduction in flow and production . . . (b) in the case of mines a reasonable allowance for depletion thereof . . . : *Provided,* That when the allowances . . . shall equal the capital originally invested . . . no further allowance shall be made."

Ludey does not deny that Congress has power to require that deductions for depreciation and depletion shall be made from the original cost when determining the cost of oil properties sold. His contention is that, at the time of the sale in question, Congress had not in terms re-

_____

1591–1603. The 1926 Act, Feb. 26, 1926, § 202 (b) 44 Stat. 9, 11–12, has a similar provision with respect to deductions " allowable . . . under this Act or prior income tax laws." See Regulations 69, Art. 1561.

quired the deductions in the case of any property, and that special reasons exist why the acts should be construed as not requiring the deductions in the case of oil wells. He urges that a corporation organized for the purpose of utilizing a wasting property, like an iron mine, is not deemed to have divided a part of its capital, merely because it has distributed the net proceeds of its mining operations; that this is true even where the necessary result of the operation is a reduction of the mineral reserve; that, *a fortiori*, the proceeds of oil mining are to be deemed income, not a partial return of capital, since there is no ownership in oil until it is actually reduced to possession; that a purchase of an oil reserve cannot be likened to the purchase of a certain number of barrels of oil; that an oil reserve is not a reservoir; that Congress allowed the deduction from gross income for depreciation and depletion probably as a reward in an extrahazardous enterprise in order to encourage new producing properties; and that to allow the deductions would result, in the event of a sale of the property, in taking back the rewards so offered.

The Government contends that in operating the properties Ludey disposed, in the form of oil, of part of his capital assets; that in the extraction of the oil he consumed so much of the equipment as was represented by the depreciation and disposed of so much of the oil reserves as was represented by the depletion; that the sale of the properties made by him in 1917 was not a sale of all of the property represented by the original cost of $95,977.33, since physical equipment to the amount of the depreciation, and oil reserves to the amount of the depletion, had been taken from it during the preceding years; and that, for this reason, the cost to plaintiff of the net property sold in 1917 was not $95,977.33, but $53,258.36.

The Court of Claims did not consider whether ordinarily deductions for depreciation and for depletion from the

original cost would be proper in determining whether there had been a profit on a sale of property. It held that no deduction from original cost should be made here because of the nature of oil mining properties. The deduction for depletion was, in its opinion, wrong, because oil properties are in essence merely the right to extract from controlled land such oil as the owner of the right can find and reduce to possession; because the existence of oil in any parcel of land is dependent upon the movement which the oil makes from time to time under the surface; and because whether there is oil in place which can be reduced to possession, and if so, how much, cannot be definitely determined. It held that, in the case at bar, the right to explore for and take out oil may actually have been more valuable at the time of the sale than at the time of the purchase; and that, for this reason, the removal of the oil by plaintiff during the years of operation cannot be said to have depleted the capital. It held that the depreciation was not deductible, because wear and tear of equipment was an expense or incident of the business.

We are of opinion that the revenue acts should be construed as requiring deductions for both depreciation and depletion when determining the original cost of oil properties sold. Congress, in providing that the basis for determining gain or loss should be the cost or the 1913 value, was not attempting to provide an exclusive formula for the computation.[3] The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets through wear and tear of the plant used. The amount of the allowance for depreciation is the sum which should be

---

[3] See *Appeal of Even Realty Co.*, 1 B. T. A. 355; Compare *Appeal of Steiner Coal Co.*, 1 B. T. A. 821; *Appeal of W. W. Carter Co.*, 1 B. T. A. 849; *Appeal of Keighley Mfg. Co.*, 2 B. T. A. 10.

set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. The theory underlying this allowance for depreciation is that by using up the plant, a gradual sale is made of it. The depreciation charged is the measure of the cost of the part which has been sold. When the plant is disposed of after years of use, the thing then sold is not the whole thing originally acquired. The amount of the depreciation must be deducted from the original cost of the whole in order to determine the cost of that disposed of in the final sale of properties.[4]  Any other construction would permit a double deduction for the loss of the same capital assets.

Such being the rule applicable to manufacturing and mercantile businesses, no good reason appears why the business of mining should be treated differently. The reasons urged for refusing to apply the rule specifically to oil mining properties seem to us unsound. If the equipment had been used by its owner on the oil properties owned by another, it would hardly be contended that the depreciation through wear and tear resulting from its use should be ignored in determining, on a sale of the equipment, whether its owner had made a gain or a loss. The fact that the equipment sold is owned by·

---

[4] Under regulations of the Bureau the amount of the year's depreciation is required to be fixed in accordance with a reasonably consistent plan; and it must, in order to be allowed, have been entered on the books of the business either as a deduction from the book value of the plant or as a credit to a depreciation reserve account. See Regulations 33 Revised, Art. 159; Regulations 45, Art. 169; Regulations 62, Art. 169; Regulations 65, Art 169; Regulations 69, Art 169. In either event it would be reflected in the annual balance sheet. After the total of such credits equals the original cost no further deduction is allowed.

the person who owned the mining rights, like the fact that it is used in one class of mining rather than in another, may have an important bearing both upon the price realized on the sale and upon the rate of depreciation which should be allowed; but these facts cannot affect the question whether the part which has been theretofore consumed by use shall be ignored in determining whether a sale of what remains has resulted in a loss or a gain.

The depletion charge permitted as a deduction from the gross income in determining the taxable income of mines for any year represents the reduction in the mineral contents of the reserves from which the product is taken. The reserves are recognized as wasting assets. The depletion effected by operation is likened to the using up of raw material in making the product of a manufacturing establishment. As the cost of the raw material must be deducted from the gross income before the net income can be determined, so the estimated cost of the part of the reserve used up is allowed. The fact that the reserve is hidden from sight presents difficulties in making an estimate of the amount of the deposits. The actual quantity can rarely be measured. It must be approximated. And because the quantity originally in the reserve is not actually known, the percentage of the whole withdrawn in any year, and hence the appropriate depletion charge, is necessarily a rough estimate. But Congress concluded, in the light of experience, that it was better to act upon a rough estimate than to ignore the fact of depletion.

The Corporation Tax Law of 1909 had failed to provide for any deduction on account of the depletion of mineral reserves. *Stratton's Independence* v. *Howbert,* 231 U. S. 399; *von Baumbach* v. *Sargent Land Co.,* 242 U. S. 503; *United States* v. *Biwabik Mining Co.,* 247 U. S. 116; *Goldfield Consolidated Mines Co.* v. *Scott,* 247 U. S.

126.  The resulting hardship to operators of mines in-
duced Congress to make provision in the Revenue Law
of 1913 and all later Acts for some deduction on account
of depletion in determining the amount of the taxable
income from mines.[5]  It is not lightly to be assumed that
Congress intended the fact to be ignored in determining
whether there was a loss or a gain on a sale of the min-
ing properties.  The proviso limiting the amount of the
deduction for depletion to the amount of the capital in-
vested shows that the deduction is to be regarded as a
return of capital, not as a special bonus for enterprise
and willingness to assume risks.  It is argued that, be-
cause oil is a fugacious mineral, it cannot be known that
the reserve has been diminished by the operation of wells.
Perhaps some land may be discovered which, like the
Widow's cruse, will afford an inexhaustible supply of oil.
But the common experience of man has been that oil
wells, and the territory in which they are sunk, become
exhausted in time.  Congress in providing for the deduc-
tion for depletion of oil wells acted on that experience.
Compare *Lynch* v. *Alworth-Stephens Co.,* 267 U. S. 364.
In essence, the deduction for depletion does not differ
from the deduction for depreciation.

The Court of Claims erred in holding that no deduc-
tion should be made from the original cost on account of
depreciation and depletion; but it does not follow that
the amount deducted by the Commissioner was the cor-
rect one.  The aggregate for depreciation and depletion
claimed by Ludey in the income tax returns for the years
1913, 1914, 1915 and 1916, and allowed, was only $5,156.

---

[5] The Bureau requires that taxpayers claiming depletion deductions
shall keep a ledger account in which deductions claimed are credited
against the cost of the property, or that a depletion reserve account
be set up.  See Regulations 33 Revised, Art. 171, 172; Regulations
45, Art. 216; Regulations 62, Art 216; Regulations 65, Art. 217;
Regulations 69, Art. 217.

He insists that more cannot be deducted from the original cost in making the return for 1917. The contention is unsound. The amount of the gain on the sale is not dependent on the amount claimed in earlier years. If in any year he has failed to claim, or has been denied, the amount to which he was entitled, rectification of the error must be sought through a review of the action of the Bureau for that year. He cannot choose the year in which he will take a reduction. On the other hand, we cannot accept the Government's contention that the full amount of depreciation and depletion sustained, whether allowable by law as a deduction from gross income in past years or not, must be deducted from cost in ascertaining gain or loss. Congress doubtless intended that the deduction to be made from the original cost should be the aggregate amount which the taxpayer was entitled to deduct in the several years.

The findings do not enable us to determine what that aggregate is. The sale included several properties purchased at different times. The deduction allowable in the several years for each of the properties is not found. Under the Act of 1913 the full amount of the depletion was not necessarily deductible. In order that the amount of the gain in 1917 may be determined in the light of such facts, the case is remanded for further proceedings in accordance with this opinion.

*Reversed.*