CHICAGO JUNCTION RYS. & UNION STOCK YARDS CO. et al. v. UNITED STATES.

No. K–197.

Court of Claims.
Oct 20, 1931.

H. C. Bickford, of Washington, D. C. (R. Kemp Slaughter and Slaughter & Bickford, all of Washington, D. C., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (Joseph H. Sheppard, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

Plaintiff states the issue in controversy as two questions: (1) Whether the excess value of the materials and supplies turned back to the railroads by the Director General over the physical inventory taken over by the Director General in the sum of $73,902.30 constitutes taxable income; and (2) whether the allowance by the Director General of $102,474.92 for shortage of units of materials and supplies not returned represents income or profit.

In its brief plaintiff assumes that the Commissioner of Internal Revenue increased the gross income by the sum of the two amounts stated. As disclosed by the facts, however, the Commissioner of Internal Revenue disallowed a deduction taken by the plaintiff on account of this material which resulted in income shown in the return being increased.

Plaintiff contends: (1) That the increased market price at which physical units were returned by the Director General at the end of federal control in partial replacement of physical units at the beginning of federal control does not constitute income. (2) That payment made by the director general of $102,474.92 for supplies taken over and not returned in kind is either a capital contribution to the taxpayer or is just compensation for property taken over by the federal government. In either event it may not legally be reduced by taxation. And (3) that the

intention of Congress as expressed in the Federal Control Act (40 Stat. 451), which provided for the payment by the Director General for supplies not returned in kind which .it is alleged the defendant seeks to tax, was that there should be a contribution of capital to make the plaintiff whole in respect to the property taken over by the United States at the end of federal control and that such contribution of capital is not income within the meaning of the Sixteenth Amendment.

The increase in taxable income of the Chicago Junction Railway Company for 1920 on account of the adjustment by the commissioner with respect to materials and supplies taken over by the Director General at the beginning of federal control and returned or accounted for at the end of federal control, which gives rise to the controversy in this case, was due to the disallowance by the commissioner of a deduction. The method employed by the commissioner in making his decision with respect to this matter was as follows:

| | |
|---|---|
| Value of material and supplies turned over to the Director General of Railroads at beginning of Federal control, January 1, 1918 | $422,590.68 |
| Less amount allowed for shortage of units of material and supplies in final settlement | 102,474.92 |
| | 320,115.76 |
| Value of material and supplies taken back from the United States Railroad Administration at the end of Federal control | 496,492.98 |
| Net increase in taxable income | 176,377.22 |

■ From the above it will be seen that the commissioner treated the allowance of $102,-474.92 simply as reimbursement to the plaintiff for the cost of materials and supplies converted, and that no element of profit was involved. This assumption was proper in the absence of evidence to establish that the cost of these materials and supplies was either more· or less than cost to the plaintiff. No such evidence has been submitted in this case. There may have been a profit or a loss on the transaction, but this cannot be determined unless the cost of the materials and supplies is known. After eliminating from the cost of the inventory of materials and supplies taken over by the Director General,

the cost of materials and supplies converted which the commissioner determined to be $102,474.92, the cost to plaintiff of materials and supplies returned in kind is found to be $320,115.76. The cost to the Director General of materials and supplies returned in kind was, however, $496,492.98, which is also the amount at which they were taken up on the books of plaintiff and subsequently charged into its accounts when and as used. The defendant determined that these were charged to operating expenses during 1920 subsequent to federal control, and the facts here do not establish that this was error. Since the materials and supplies were entered upon the books at a value in excess of cost to the plaintiff, in the sum of $176,377.-22, and charged to operating expenses during 1920 in such excess amount, it is clear that its taxable income reported was understated by this amount. This principle was approved by the United States Board of Tax Appeals in Terminal Railroad Association of St. Louis, 17 B. T. A. 1135, 1167, in which the commissioner had disallowed as a deduction for 1920 the excess value over cost to the taxpayer at which materials and supplies returned in kind had been entered on the books. In sustaining the position which the defendant takes in this case, the board said: "Here the Commissioner contends that in determining the deduction to which petitioner is entitled for expenditures of materials and supplies, cost must be considered instead of the increased value at which such materials are turned back. While the result in the present case is substantially the same as it would have been had the Commissioner included such increased value as income, this is only so because it has been assumed (and the record does not establish that such assumption is incorrect) that all materials and supplies received in 1920 to replace those turned over in 1917 were expended in 1920. If we could assume that no part of the materials or supplies so received was used in 1920, or that only a fixed percentage was used in that year, the computation of the cost of the materials and supplies consumed during the year would have to be adjusted accordingly. The distinctions between the two positions taken in these two cases are not merely distinctions in theory, but are such as to lead to very different results in many cases. If the increase in value is income as the Commissioner contended in Indiana Harbor Belt Railroad Co., supra [16 B. T. A. 279], it affects the taxes of only one year. But if it affects the deductions allowable, this increase in value affects the years in which the materials

and supplies are consumed and is to be spread over such years in proportion to such consumption. We are of the opinion that the question now presented is entirely different from that presented in the case cited and is not controlled by the decision there reached. We are further of the opinion that the principle adopted by the Commissioner in allowing as a deduction only the cost to petitioner of materials and supplies used is sound. Cf. United States v. Flannery, 268 U. S. 98 [45 S. Ct. 420, 69 L. Ed. 865], and United States v. Ludey, 274 U. S. 295 [47 S. Ct. 608, 71 L. Ed. 1054], where deductions were confined to actual losses."

The claim of plaintiff that no profit could result by the payment from the Director General in the amount of $102,474.92 is without merit. The specific question whether a profit realized through conversion of materials and supplies by the Director General, for which a cash allowance was made, was presented in the case of the Lehigh & Hudson River Railway Company, 13 B. T. A. 1154, affirmed (C. C. A.) 36 F.(2d) 719. This question was decided in favor of the government by the board, and in connection therewith the board said:

"The petitioner argues that an analysis of the legislative, executive and administrative acts of the United States Government in connection with Federal control of railroads shows that the Government intended to compensate the railroads for the possession, control, operation and utilization of their properties and, after the period of Federal control, to return the properties to the owners in substantially as good repair and in substantially as complete equipment as they were in when taken over by the Government; this was a distinction between capital and income and the same distinction should be made for income-tax purposes; and whatever cash was paid by the Government to the petitioner to make up a shortage in inventory of materials and supplies merely made capital whole and did not give rise to income.

"The acts relating to Federal control should be read with the revenue acts in order to determine the intent of Congress, but we do not believe that Congress ever indicated in any act relating to Federal control of the railroads that circumstances such as are present in this case could not give rise to income. Particularly is this so when we consider the Commissioner's regulations and certain provisions of the Revenue Act of 1921. Under the revenue acts, if a person parts with his property and, as a result, receives cash or its equivalent in excess of the cost or, in a proper case, the March 1, 1913, value of the property, he has received income. This is so whether he parted with the property voluntarily or involuntarily."

Plaintiff further contends that the allowance of $102,474.92 was a contribution of capital to place it in the same position which it occupied at the beginning of federal control and, therefore, does not result in any taxable income. At the beginning of federal control it had materials and supplies on hand which had cost it $422,590.68. Had these properties not been taken over and operated by the government during federal control, this is the value at which such materials and supplies could have been charged to the operations of plaintiff for tax purposes; but, by reason of the fact that materials and supplies were returned by the Director General worth $496,492.98, and in addition thereto an allowance was made for shortages in the amount of $102,474.92, plaintiff claims, in effect, that in determining its taxable income for 1920 it should be permitted to charge into its accounts $598,967, or an amount of $176,377.22 in excess of what it would have been entitled to if its properties had not been taken over. Articles 49 and 50 of Regulations 45, promulgated under the Revenue Act of 1918, specifically provide that in case of an involuntary conversion of property the replaced property shall be charged into the accounts at the cost of the property converted. As stated by the Board of Tax Appeals in Lehigh & Hudson River Railway Co., supra, the "Revenue Act of 1921, in sections 202 (d) (2) and 234 (a) (14), recognized and incorporated such a method of relief in the law." With respect to this provision the board said: "This feature of the Commissioner's regulations, which was the same both before and after the passage of the Revenue Act of 1921, seems to us to be a reasonable provision and the sort of a provision that Congress expected would be made. Otherwise, during a period of rising prices, the conversion would not only result in no harm to the owner of the property from an income tax standpoint, but would improve his position for income tax purposes in that the restored property would go through his accounts at a higher cost than the cost or March 1, 1913, value of the property which was converted."

The statutes and regulations referred to provide for the postponement of taxation on profit of this character if (1) the taxpayer proceeded forthwith to expend the proceeds

of the conversion in the acquisition of other property of a similar character or related in service or use to the property converted; or (2) in the acquisition of 80 per cent. or more of the stock of a corporation owning such other property; or (3) in the establishment of a replacement fund; and (4) such restored property was not charged into the accounts of the taxpayer at an amount in excess of the cost to the taxpayer or the March 1, 1913, value of the property converted.

The facts establish that no replacement reserve was established by the plaintiff railway company in this amount, but materials and supplies purchased to replace the shortage in units of materials and supplies were entered on the books of the railway company at replacement cost and were so charged out when used in the operations of the company or when used for additions or betterments to the railway company's properties. The plaintiff did not meet the conditions required to relieve it from taxation on any profit that might have been realized from the conversion of materials and supplies by the Director General.

With respect to the provisions of the statutes and the regulations relating to involuntary conversions, the Board of Tax Appeals, in Lehigh & Hudson River Railway Co., supra, said: " * * * In view of the method thus provided, whereby the petitioner could have been relieved of all tax in regard to the income now in controversy without at the same time laying a basis for a double deduction by a reduction of its future income, we can not read any inhibition in the acts relating to Federal control which would preclude the possibility of income to the petitioner from the transaction set forth in the findings of fact in this case."

Plaintiff further argues that the amount allowed for shortages constitutes just compensation for failure to return the property and that to tax any portion of this allowance would violate the Fifth Amendment to the Constitution. Cases are cited to support the theory that constitutional rights and guaranties may not be destroyed under the guise of taxation. Undoubtedly Congress had this principle in mind when it enacted sections 202 (d) (2) and 234 (a) (14), supra, of the Revenue Act of 1921 (40 Stat. 230, 257). These provisions of the sections of the statute protect the taxpayer's constitutional rights, but, at the same time, set up barriers against any improvement in its position for tax purposes.

No attempt has been made to tax the plaintiff on any restoration of capital, in that no tax has been imposed on any part of the sum of $422,590.68 which represented the cost to it of the materials and supplies taken over by the government.

The record does not show the amount of gain realized through the conversion of materials and supplies by the Director General, for which he made a cash allowance of $102,-474.92, but it is clear from the foregoing that whether or not a gain was derived no difference results in the taxable income determined by the commissioner for 1920. On the theory that no gain was derived, it appears that since the entire inventory returned in kind and entered on plaintiff's books at an amount in excess of cost to it was used during 1920 subsequent to federal control, charged to its operating expenses, and deducted in its return, the net taxable income reported was properly increased by the commissioner in the sum of $176,377.22 by disallowing this amount as a deduction. On the theory that the allowance for shortages was in excess of the cost to plaintiff of the specific materials and supplies converted, and a profit was realized to this extent, its gross income should be increased by such amount. In this event the amount disallowed as a deduction by the commissioner would be reduced in a like sum. This method of computation would not disturb the results determined by the commissioner as net taxable income would be increased in the sum of $176,377.22.

Plaintiff is entitled to recover $28,675.80, under findings 11, 12, and 13, with interest, for which judgment will be entered. It is so ordered.