OPINION. ARundell, Judge: Petitioner contends in this proceeding that it is entitled to the increased deductions claimed in its tax returns for 1942 and 1943 to compensate for abnormal depreciation suffered by various items of its printing equipment in producing maps and other printed material for the armed forces during those years. The deficiencies herein result from the respondent’s refusal to allow any additional depreciation for either year. Petitioner had in prior years depreciated its items of equipment on the straight line basis, assigning to each unit an estimated life of 10 years, with the exception of 2 trucks, which were assigned a 5-year period. The straight line method of depreciation assumes a uniform annual rate over the life of the asset and, under ordinary circumstances, no adjustments are made to reflect the increased or decreased usage of the asset during any taxable year. This method contemplates the setting aside in each year of a sufficient sum in order that at the end of the useful life of the' asset the aggregate of the annual amounts of allowed depreciation, plus its salvage value, will equal its original cost. United States v. Ludey, 274 U. S. 295; Graves, Cox & Co., 27 B. T. A. 546. The straight line method having been uniformly applied by petitioner in prior years, it should not be abandoned for the years in question unless there is a cogent reason for a change. Lake Charles Naval Stores, 25 B. T. A. 173 (petition to review dismissed, C. C. A., 5th Cir.). However, petitioner contends that such factors as the excessive use of its machinery, its operation by inexperienced personnel, the demand of war work which prevented the normal stoppage of the machinery for repairs, and the increased amounts expended for repairs, replacements, and maintenance during the years involved, evidence the fact that the remaining useful life of such equipment was reduced and that petitioner is entitled to claim the additional depreciation involved herein. Essentially, the petitioner argues that the only plausible method of determining the extent of the increased wear and tear on its equipment during 1942 and 1943 was the approximate ratio between the usage in those years and the usage in prior years. The burden of showing the reasonableness of the rates of accelerated depreciation claimed rests upon the petitioner. Had petitioner previously depreciated its equipment on a “unit of production” basis, this case would present little difficulty, as petitioner has clearly shown the increased usage of its various items of equipment during the years involved, which is the principal consideration in computing depreciation under that system. However, under the straight line basis, the principal question is whether the useful life of the equipment has been diminished, and usage is merely one factor to be considered in making such a determination. Moreover, we believe that the straight line method contemplates reasonable variations from year to year in the use of depreciable assets, so long as the remaining useful life of the assets is not reduced below or extended beyond the term of years originally selected as its normal useful life. Therefore, to prevail herein, the petitioner must justify the increased rate of depreciation it claims by showing not only that there were increased usage and other conditions which would normally tend to accelerate the exhaustion of its equipment, but that in fact such factors actually did materially reduce its useful life. Woodside Cotton Mills, 13 B. T. A. 266. In our opinion, petitioner has wholly failed to present satisfactory evidence that the useful life of its printing equipment was so reduced by usage in 1942 and 1943 as to warrant the substitution of- accelerated rates in lieu of the normal rates it had previously used in computing depreciation. Petitioner’s general manager testified that when the rates of abnormal or accelerated depreciation were selected it had no way of determining how long its machinery would last and that no effort was made in either 1942 or 1943 to determine the remaining useful life of each of the various items of equipment involved. The only witness produced by petitioner who testified on the subject stated that under normal operation the 6 second-hand presses had an estimated useful life of from 10 to 15 years. As respondent has allowed petitioner to depreciate this equipment at a normal rate of 10 per cent on a straight line basis over a 10-year period, the minimum life estimate, respondent’s disallowance of accelerated depreciation does not on its face appear to have been arbitrary or unreasonable. As far as we can ascertain from the record, the machines were never thoroughly examined to determine exactly the extent of actual exhaustion during the years in question, nor is there any specific evidence as to the effect of the use of inexperienced or incompetent help on the normal wear of such equipment. In fact, no evidence of any significance has been presented by petitioner relative to items other than the photo composing machine and the 6 presses. Petitioner points to the increased amounts expended by it on repairs, replacements, and maintenance as proof of the actual- abnormal wear suffered by its machinery during 1942 and 1943. The untoward expenditures for repairs do not necessarily demonstrate the deterioration of equipment, but may, on the contrary, be evidence that such repairs adequately compensated for the increased wear and tear to which the machines were subjected. This may well be the case here, as the record shows that the cost of repairs of the equipment in question rose from $702.97 in 1941 to $3,944.55 in 1942 and $5,036.63 in 1943. Although there is some suggestion that this increase possibly was due to a rise in the cost of parts and labor, there is no evidence as to the extent of increased costs, and certainly there is no basis for assuming that these factors alone were responsible for so marked an increase in the cost of repairs. In this connection, it is also interesting to note that this equipment was at the time of hearing still being used in the petitioner’s business. Although petitioner points out that it has been unable to get delivery of new machinery ordered in 1943, there is no indication that the old equipment does not still produce work of quality acceptable to its customers. Finally, the various rates of accelerated depreciation selected by petitioner on its different pieces of equipment were not based upon actual examination of the machinery, nor were they computed by any uniform method. The rates appear to have been determined by petitioner’s general manager, following discussions with its accountant and the manufacturer’s representative, and to be the result of a general appraisal of such factors as the increased usage and repairs, untrained personnel, and the other factors previously mentioned. Petitioner requests that, if we decide that it is not entitled to the accelerated depreciation claimed, we should determine what amount or rate of accelerated or abnormal depreciation should be allowed for the years 1942 and 1943. In our opinion, the record provides no adequate basis for the computation of rates of depreciation which would be more reasonable than those which were used by petitioner in prior years under the straight line method and have been allowed by respondent for the years involved. Moreover, the computation of depreciation must be an intelligent estimate, not a mere guess. Lake Charles Naval Stores, supra. After careful consideration of all the evidence herein, we are of the opinion that the petitioner has failed to sustain the burden of showing that it is entitled to the accelerated depreciation claimed by it in its 1942 and 1943 Federal tax returns. Therefore, respondent’s determination of the deficiencies herein is sustained. Decision will be entered for the respondent.