HÉCTOR FAJARDO ROGER, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener. LUIS V. VALIENTE ET UX., Petitioners, *v.* THE SAME, Respondent; THE SAME, Intervener. OSVALDO CÓRDOVA ET UX., Petitioners, *v.* THE SAME, Respondent; THE SAME, Intervener.

Nos. 256, 257 and 258.  Argued April 10, 1951.—Decided April 30, 1956.

*Oscar Souffront* and *J. J. Ortiz Alibrán* for petitioners. *Víctor Gutiérrez Franqui, Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney General,* for intervener, defendant in the main action.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Héctor Fajardo Roger, Wilda Fajardo Roger, and Carmen Roger acquired by inheritance [1] from Mateo Fajardo Dávila, who died on August 2, 1938, a property consisting of 308.33 cuerdas known as "Hacienda Carolina," situated in the ward of Buey of the municipal district of San Germán,

---

[1] Petitioners' allegations in that connection, including Carmen Roger's participation as to one-sixth part of one half as well as to the other half of the property, were admitted by the Treasurer.

in which the participation of each was, and continued to be until it was sold because no division was ever made, the following: Héctor and Wilda Fajardo Roger, one half each of five sixths of one half; and Carmen Roger, one half plus one sixth of the other half.

The property in question was sold in 1944 to the Land Authority for the price of $30,027.50.

In the 1944 individual income-tax returns filed by petitioners, each of them claimed a loss—in proportion to their respective share—derived from the alleged total loss of $17,185.76, sustained in the sale of the property in question, on the alleged market value of at least $47,213.26 at the time of acquisition.

The Treasurer disallowed the losses claimed and, taking as market value the assessment of the property at the date of Mateo Fajardo Dávila's death—$12,860—determined a net gain of $17,167.50 realized from the sale, and allotted the same to each of the petitioners in proportion to his respective share. After proper steps were taken, he notified each of them of the corresponding final deficiency.

The petitioners appealed individually to the former Tax Court in the manner provided by law, challenging the determination of the deficiency made by the Treasurer. After hearing the evidence of both parties in one of the cases, on which the others were submitted, the court found proved (1) that the market value of the property which petitioners sold in 1944 to the Land Authority was, in 1938, when they acquired it, $51,400, *including* the value of the plantations of coffee—which was cultivated on the property—and the existing structures and machinery; (2) that as soon as petitioners took possession of the property, they gave up completely, voluntarily, and for their own convenience, the planting and cultivation of coffee and devoted the property to pasture lands for the grazing of the draft oxen owned by them which they used on their other farms devoted to the

cultivation of sugar cane, as a result of which the coffee which had theretofore been cultivated on the farm disappeared gradually; (3) that the true and actual value in 1938 of the property in question, *excluding* the coffee plantations which had already disappeared by 1944 when the property was sold to the Land Authority, but *including* the structures and machinery, was $36,850; and that the sale made in 1944 for $30,027.50 resulted in a net loss of $6,822.50.

On the basis of these findings, the court rendered judgment holding, in the cases of Héctor and Wilda Fajardo Roger, that each of them had sustained a loss of $1,421.35, and in that of Carmen Roger, that she sustained a loss of $3,979.80, and directing the Treasurer to file a new computation in each case within the statutory period.

The petitioners, in separate petitions for certiorari —which will be treated as a single one because they are based on identical grounds—appealed to this Court urging that we review the said judgments. The writs were issued.

Petitioners maintain that the lower court erred (1) in fixing, as the basis for determining the gain or loss, the amount of $36,850, which was the value of the property in 1944 rather than in 1938, thereby disregarding its market value in 1938 which was $51,400, as found proved by the court; (2) in holding that since in 1944 "the value of the property was lower than its value in 1938 by reason of the condition in which it was left by the new owners," the basis ought to be $36,850; (3) in holding, in the cases of Héctor and Wilda Fajardo Roger, that the loss sustained by each one of them was only $1,421.35, and in that of Carmen Roger, that the loss was only $3,979.80, rather than the loss claimed by each of them; and (4) in weighing the evidence.

There is no controversy here as to the fact that the value of the property, when it was acquired by petitioners in 1938, was $51,400, including the value of the land, the structures,

and the machinery, as well as of the coffee plantations, properly speaking; and that if the latter had not existed at that time, the value of the property would have been $36,850. Nor is there any controversy as to the fact that the plantations were abandoned and destroyed by petitioners for the convenience of their other agricultural activities carried on in other farms devoted to the cultivation of sugar cane.[2] The controversy between the parties is whether, since the plantations disappeared between 1938 and 1944 as a result of abandonment by the parties in the interest of the other activities of their agricultural business, the basis for computing the loss, pursuant to §§ 7(a)(5) and 5(a) and (b) of the Income Tax Act of 1924, as amended, which is the applicable law,[3] which they sustained as a result of the sale made in 1944, must be determined on the value of $51,400, represented by the total assets existing in the farm in 1938, among which were the coffee plantations, or on the value of

---

[2] According to the evidence in the record, in 1938 there were in that property 105 cuerdas of pasture land, consisting of low lands and hills, of which about 80 cuerdas were devoted to guinea grass and about 25 to Para or natural grass.

The last coffee crop was that of 1941. During the last two years prior to the sale the property was devoted only to the pasturing of the ox teams used in the other properties of petitioners.

[3] "Section 7.—(a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

". . . . . . . . .

"(5) If the property was acquired by bequest, devise or inheritance, the basis shall be the fair market value of such property at the time of such acquisition . . .

"Section 5.—(a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivisions (a) or (b) of section 7, and the loss shall be the excess of such basis over the amount realized.

"(b) In computing the amount of gain or loss under subdivision (a) proper adjustment shall be made for (1) any expenditure properly chargeable to capital account, and (2) any item of loss, exhaustion, wear and tear, obsolescence, amortization, or depletion, properly chargeable with respect to such property."

$36,850, represented by such assets excluding the coffee plantations, which were the object of the sale in 1944.

Petitioners maintain that "the lands are not depreciable, keeping intact the value of the corresponding basis, in the event of sale or other disposition of the property," and that none of them claimed deduction for destroyed or abandoned crops during the years 1938 to 1944, "this being the only instance in which the reduction of the basis in this case would be warranted, although it is to be presumed that if claim had been made it would have been disallowed as being contrary to the law and its regulations."

Petitioners' premise is wrong. Although it is true that the coffee trees (plantations), by reason of being adherent to the soil, are immovables—§ 263 of the Civil Code, 1930 ed.—they are in fact depreciable property even if the land is not,[4] *Redlands Security Co.* v. *Comm.*, 5 B.T.A. 956; *Cf. Brown* v. *Tax Court*, 74 P.R.R. 244, 251, and their depreciation is allowable as a deduction from the gross income for the year in which it occurred pursuant to § 16 (*a*) (8) of the Act. In this connection, the *depreciation* factor comes into play in this case for the purpose of re-adjusting the basis—the original value of the plantations in 1938—and thus determining the value of the latter at the date of their subsequent total loss. Both the depreciation and the loss by destruction are items to be considered under § 5 (*b*) (2) of the Act in adjusting the basis established by § 7 (*a*) (5), and thus determining the actual loss *derived*

---

[4] Article 129 of the Regulations of the Treasurer provides:

"Depreciable Property.—The necessity for a depreciation allowance arises from the fact that certain property used in the business gradually approaches a point where its usefulness is exhausted. The allowance should be confined to property of this nature.

"In the case of tangible property, it applies to that which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence due to the normal progress of the art, as where machinery or other property must be replaced by a new invention, or due to the inadequacy of the property to the growing needs of the business. It does not apply . . . to land apart from the improvements or physical development added to it."

from the sale of the property in 1944. According to § 16 (a) (4) of the Act,[5] the destruction of the plantations is a loss deductible from the gross income in the year or years in which it was actually sustained. *Gaylord* v. *Commissioner of Internal Revenue*, 3 T. C. 281, 296; 5 Mertens, *Law of Federal Income Taxation*, § 28.72, p. 317.

■■ The losses recognized by § 16 of the Act as deductions for the taxable year in which they occur are losses of capital,[6] losses of some kind of property or asset, 5 Mertens, *op. cit.*, § 28.12, p. 118, incurred in some trade or business.

The law treats losses and other allowances for depletion, wear and tear, decay, obsolescence, amortization, or exhaustion, recognized by § 16 *supra*, as return of capital, 3 Mertens, § 21.161, p. 600, and in determining the gain or loss derived from the sale of property, § 5 (b) (2) requires that the corresponding basis be adjusted pursuant to § 7 (a) by deducting from the cost or market value at the time of acquisition, as the case may be, the afore-mentioned items which are properly chargeable with respect to such property.

Petitioners' agricultural activities also included the cultivation of sugar cane on other properties similarly acquired from their predecessor in interest. The cultivation of the coffee plantations was part of the whole of such activities, and their abandonment and destruction were due to the advantages of devoting the coffee farm to the pasturing of the oxen used in the operation of the other properties. The

---

[5] "Section 16 (a).—In computing net income there shall be allowed as deductions:

"    .        .        .        .        .        .        .

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any trade or business. The losses under this paragraph and paragraphs (5) and (6) of this section shall be deducted only during the taxable year when they have been really sustained. . . ."

[6] The term capital, for the purposes of the deduction of losses and other allowances recognized by § 16, is not employed in a strict sense. 5 Mertens, *op. and sec. cit.*

depreciation of the trees as well as their total loss occurred in petitioners' agricultural business, consisting of all their activities.

▆▆▆▆ The fact that petitioners made no claim either for depreciation of the plantations or for their complete loss in one or more of the taxable years from 1938 to 1944, certainly gives them no right to be allowed at this time, *as a loss derived from the sale* of the property in the taxable year 1944, that which constituted a loss derived from other causes, incurred in previous taxable years. *Kittredge v. Commissioner of Internal Revenue*, 88 F. 2d 632; *Beckridge Corp. v. Commissioner of Internal Revenue*, 129 F. 2d 318; *Cf. United States v. Ludey*, 274 U. S. 295, 71 L. Ed. 1054. The deductions allowed by the law in § 16 may be claimed only in the taxable year in which they are actually incurred, and there is no provision in the statute permitting the postponement of those deductions—loss, depletion, wear and tear, obsolescence, amortization, or exhaustion—and to claim them at a subsequent date as a loss *derived* from the subsequent sale. Petitioners argue that what they did was to substitute grass for the coffee plantations, and that according to the doctrine announced in *López de la Rosa v. Tax Court*, 66 P.R.R. 319,[7] no deductions could be claimed for the abandonment and destruction of the coffee. The evidence on this point does not warrant their contention, for, apart from the fact that in 1938 there were on the farm 105 cuerdas devoted to guinea and to Para grass, there is no evidence on investment of capital to replace, by the additional planting of grass, the coffee plantations which were abandoned and gradually destroyed.

▆▆▆ Since the trial court held that the market value of the property in 1938, including the coffee plantations, was $51,400, and that if the plantations had not existed in that

---

[7] The cases of *López de la Rosa* v. *Tax Court*, 66 P.R.R. 319, and *Buscaglia, Treas.* v. *Tax Court*, 69 P.R.R. 831, cited by petitioners, play no role in the controversy in the present case.

year the value would have been $36,850, it may be readily seen that the court fixed the value of the plantations at $14,550 as of 1938. Since the plantations had disappeared completely by the time the property was sold in 1944, the court proceeded correctly in adjusting the original basis of $51,400, deducting therefrom the sum of $14,550 corresponding to the factors of depreciation and complete loss of the plantations, determining the adjusted basis at $36,850, and, consequently, fixing at $6,822.50 the loss *derived from the sale* for $30,027.50 made in 1944, which it correctly apportioned among petitioners in proportion to their respective interests in the property.

The judgments will be affirmed.

Mr. Justice Sifre and Mr. Justice Saldaña concur in the result.