Robley H. Evans and Julia M. Evans v. Commissioner.
Evans v. Commissioner
Docket No. 58067.
United States Tax Court
T.C. Memo 1957-156; 1957 Tax Ct. Memo LEXIS 112; 16 T.C.M. (CCH) 639; T.C.M. (RIA) 57156; July 31, 1957
*112 Petitioner was engaged in the business of leasing automobiles. During the taxable years he leased all of his automobiles to U-Drive. U-Drive leased automobiles to customers for extended periods of time and rented automobiles to the public for short periods of time. U-Drive's business required that petitioner keep it well stocked with late model, modernly equipped automobiles. The leased automobiles were returned to him at the termination of the leases and the rented automobiles were usually returned within 15 months of their original purchase by petitioner. Petitioner sold these automobiles immediately. Held, useful life and salvage value of the automobiles determined, for the purposes of depreciation. Lyle L. Iversen, Esq., and Donald J. Yellon, Esq., for the petitioners. John H. Welch, Esq., for the respondent. *113 TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in the petitioners' income taxes for the years 1950 and 1951 in the respective amounts of $32,847.62 and $49,514.04. The petitioners conceded that certain adjustments made by the Commissioner were correct. The Commissioner also conceded that certain of his adjustments were improper. The only issue left for our decision arises from the Commissioner's partial disallowance of claimed depreciation deductions. He determined that automobiles used in the petitioners' business had a shorter useful life than claimed and also a salvage value. A stipulation of certain issues in controversy was filed by the parties. It is incorporated herein by this reference. Findings of Fact The stipulated facts are so found and are incorporated herein by reference. The petitioners, Robley H. Evans and Julia M. Evans, are husband and wife. They reside in Bellevue, Washington, and filed their joint income tax returns for the years 1950 and 1951 with the collector of internal revenue for the district of Washington. During the years 1950 and 1951 Robley was engaged in the business *114 of leasing automobiles in the vicinity of Seattle. He has been in that business as a proprietor since 1936. During 1950 and 1951 Robley leased all of his automobiles to Evans U-Drive, Inc. (hereinafter referred to as U-Drive), a corporation, at the rate of $45 per month per automobile. U-Drive was organized in 1949. All of its outstanding stock was held by Robley's son, Robert J. Evans, until near the end of 1951 at which time Robley acquired a portion of the stock. Robley was the manager of U-Drive. The lease agreement between Robley and U-Drive provided that Robley would furnish and lease to U-Drive a sufficient number of automobiles to efficiently operate and conduct an automobile rental business. Robley retained title to the automobiles and had the right to sell and dispose of any of the automobiles at any time. U-Drive agreed to pay all expenses of maintenance and repair of the automobiles and also to keep the automobiles insured against liability for personal injury or property damage. U-Drive also assumed the risk of loss or damage. A supplemental agreement dated December 1, 1951, gave U-Drive an option to purchase any automobile in its possession at any time, for the actual *115 cost of the automobile to Robley. U-Drive engaged in two types of activity during the taxable years. It leased about 30 to 40 per cent of its automobiles to customers for long periods of time, i.e., 18 to 36 months, and it rented the remainder of its automobiles to the general public on a short-term basis, i.e., for a few hours, a few days, or a few weeks. Robley normally kept a supply of Chevrolet, Ford and Plymouth automobiles on hand, which he purchased new from local automobile dealers, usually at the factory price. He endeavored to maintain a modern fleet of rental automobiles as this was necessary to meet the demands of U-Drive's leasing and rental business. Robley periodically owned more automobiles than were necessary for the efficient operation of U-Drive's short-term rental business. When this situation occurred, he would examine the cars in use and would sell those that were not needed. The oldest and least desirable automobiles were sold first. When sold, the automobiles usually had been driven an average of 15,000 to 20,000 miles and were generally in good mechanical condition. Many automobiles were sold at the end of the tourist season, i.e., after Labor Day. *116 At the termination of U-Drive's extended period leases, the automobiles would be returned to Robley who would sell them. When sold, the automobiles might have been driven up to 50,000 miles. They were usually in good mechanical condition and state of repair at the time of sale. The surplus automobiles sold by Robley could have been used longer than they were; however, customers demanded late model automobiles that were currently in style. Older automobiles did not have much value as rental vehicles. During the taxable years, Robley sold the automobiles used by U-Drive in the short-term rental phase of its business after they had been used about 15 months. And he usually sold the automobiles which had been leased for extended periods as soon as the lease was terminated. If a new lease was executed, a new car was usually provided for the lessee. Robley sold most of his surplus automobiles to used car dealers, jobbers, or brokers. As a general rule, the automobiles were sold at current wholesale prices. Robley did not advertise the sales of his automobiles nor did he maintain a showroom or any other retail facilities for sale of his surplus automobiles. Robley's tax returns for *117 1950 and 1951 disclosed that he sold 140 and 147 automobiles respectively, in those years. The average cost, sales price, depreciation claimed, and gain per automobile, were approximately as follows: Sales
Depreciation
Year
Cost
Price
Claimed
Gain
1950
$1,650
$1,380 $515 $245
1951
1,495
1,395
450
350 Most of the automobiles sold had been held by Robley less than 15 months. On his tax returns for the years 1950 and 1951 Robley claimed depreciation on the automobiles he leased to U-Drive in the respective amounts of $77,972.71 and $92,890.05. These amounts were computed and the deductions claimed on the basis that the automobiles had an estimated useful life of 4 years, with no salvage value at the end of the 4-year period. The Commissioner determined allowable depreciation on these automobiles for the years 1950 and 1951 on the basis of an estimated useful life for each automobile of 17 months and a salvage value of $1,325 at the end of the 17-month period, or the amount of undepreciated cost at January 1, 1950, for automobiles in use at that date, if less than $1,325. The automobiles leased to U-Drive during the taxable years for *118 use under extended term leases, had a useful life of 3 years and a salvage value of $600. However, if the undepreciated cost of such automobiles in service at January 1, 1950, is less than $600, then that amount will be the salvage value of those automobiles. The automobiles leased to U-Drive during the taxable years for short-term rental use, had a useful life of 15 months and a salvage value of $1,375. However, if the undepreciated cost of such automobiles in service at January 1, 1950, is less than $1,375, then that amount will be the salvage value of those automobiles. Opinion The sole question for decision relates to the rate of depreciation to be used by Robley upon automobiles used by him in his business of leasing automobiles to U-Drive, a corporation owned solely by his son until the latter part of 1951, at which time Robley acquired a portion of the stock. U-Drive engaged in two types of activities. It leased about 30 to 40 per cent of its automobiles to customers for extended periods of time (18 to 36 months) and it rented the remainder of its automobiles to the public for short periods of time (a few hours, days, or weeks). Section 23(1) of the Internal Revenue *119 Code of 1939 provides for the deduction of a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) of property used in the trade or business. Regulations 111, Section 29.23(1), provide that the proper allowance for depreciation is that amount which should be set aside for the taxable year whereby the aggregate of the amounts so set aside, plus the salvage value will, at the end of the useful life of the property, equal the cost or other basis of the property. See also United States v. Ludey, 274 U.S. 295 (1927). The reasonableness of depreciation claimed is to be determined in the light of conditions known to exist at the end of the period for which the return is made. Leonard Refineries, Inc., 11 T.C. 1000 (1948). Robley has consistently claimed deductions for depreciation on the basis that his automobiles had a useful life of 4 years, with no salvage value at the end of the 4-year period. The Commissioner however determined allowable depreciation on Robley's automobiles for the taxable years on the basis of an estimated useful life of 17 months and a salvage value of $1,325, or the amount of undepreciated *120 cost at the beginning of the first taxable year for automobiles in use at that date, if less than $1,325. Robley has engaged in the business of leasing authomobiles as a sole proprietor since 1936. During World War II and for several years thereafter, automobiles were scarce and Robley was forced to use his automobiles for long periods of time before selling them and acquiring new ones. Depreciation claimed by Robley on the basis of a useful life of 4 years may not have been unreasonable during that period, though we think he still should have provided for a salvage value in his computation. However, in 1949, when new automobiles were more easily obtainable, Robley's son organized U-Drive, and Robley began leasing all of his automobiles to that corporation. Robley's lease agreement with U-Drive provided that he would furnish and lease a sufficient number of automobiles to operate and conduct an automobile rental business efficiently. To carry out the lease, Robley thus had to provide automobiles to U-Drive with which the latter could meet competition and that competition required him to furnish U-Drive with late model automobiles with modern equipment, i.e., automatic transmissions, *121 etc. Robley would furnish new automobiles to U-Drive for its extended period leases. At the termination of those leases some 18 to 36 months later, the automobiles would be returned to Robley who would then sell them. If the customer renewed his lease, he would be provided with another new automobile. Current model automobiles were provided for the short-term rentals. Many of these were returned to Robley at the end of the tourist season, when demand for rental automobiles subsided, and they were sold by him at that time. Robley would start to purchase new model automobiles as soon as they came on the market in order to replenish his fleet and would continue doing so, as required by U-Drive's needs. Thus Robley was continually buying new automobiles and selling "old" ones as they were returned to him by U-Drive even though many of the latter automobiles were barely "broken in." U-Drive's competition required this method of operation and in view of this change in Robley's operations, we think that the Commissioner was justified in adjusting Robley's method of depreciating his automobiles. However, we think that the Commissioner's adjustment should have taken into consideration the *122 two different uses made of the automobiles leased to U-Drive, i.e., extended term leases and short-term rentals. We have made a finding, and we so hold, that the automobiles which Robley leased to U-Drive during the taxable years for use under extended term leases, had a useful life of 3 years and a salvage value of $600, and that the automobiles which it leased to U-Drive for short-term rental, had a useful life of 15 months and a salvage value of $1,375. If the undepreciated cost of the automobiles in service at January 1,1950, is less than $600 and $1,375 for the respective classes of automobiles, then that amount will be the salvage value of those automobiles. See J. W. McWilliams, 15 B.T.A. 329 (1929). Decision will be entered under Rule 50.