## B. F. SHAW PRINTING CO. v. HELVERING.

### No. 6058.

United States Court of Appeals for the District of Columbia.

Argued May 16, 1934.

Decided June 25, 1934.

Sperry Butler and Edward S. Bentley, both of New York City, for appellant.

Sewall Key, Frank J. Wideman, Robert H. Jackson, Bernard D. Hathcock, and Erwin N. Griswold, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This is a petition to review a decision of the United States Board of Tax Appeals, determining a deficiency of $770.67 in appellant's income tax for the year 1929.

It appears, under an agreed statement of facts, that prior to March 1, 1913, Mabel S. Shaw was doing business in Dixon, Ill., under the name of B. F. Shaw Printing Company, as proprietor and publisher; and owned and conducted a newspaper known as the "Dixon Telegraph." Appellant is an Illinois corporation, incorporated in January, 1921. Prior to the date of incorporation, Shaw owned and used in connection with her business certain printing machinery and equipment, which had cost her $45,121.62. Appellant corporation acquired the printing establishment from Shaw, including the machinery and equipment, in consideration of delivering to her all of its capital stock.

It further appears that immediately after such exchange Mabel S. Shaw assumed control of appellant company. No gain or loss was recognized by the parties in this transaction. The business was continued up to and including the whole of the year 1929; and, in the ownership and conduct of publishing the newspaper, the machinery and equipment were used during this period.

In her income tax return for the calendar year 1919, with the consent and approval of the Commissioner of Internal Revenue, Shaw deducted from her taxable income, among other things, the sum of $4,003.79, representing depreciation upon the machinery and equipment. In 1920, she deducted from her taxable income, as depreciation on her machinery and equipment, 10 per cent. of the original cost, $4,512.16; making a total deduction for the years 1919 and 1920, on account of depreciation of machinery and equipment, of $8,515.95.

In its income tax return, the corporation, for each of the calendar years 1921, 1922, 1923, 1924, 1925, 1926, 1927, and 1928, with the consent and approval of the Commissioner of Internal Revenue, deducted annually from its taxable income, as depreciation on the machinery and equipment, 10 per cent. of its original cost, or the sum of $4,512.16; making a total deduction, on account of depreciation, by the corporation, of the sum of $36,097.28. It is agreed that the normal, useful life of machinery and equipment of the character here involved is ten years.

In its income tax return for the calendar year 1929, appellant deducted, as depreciation upon the machinery and equipment, the sum of $4,512.16, representing 10 per cent. of the original cost. The Commissioner of Internal Revenue, however, allowed depreciation only to the extent of $508.37, and disallowed the claim to the extent of $4,003.79; claiming that, except for the sum of $508.-37, the assets had been fully depreciated. In other words, the Commissioner took the aggregate sum paid by Shaw prior to the transfer to appellant corporation of $8,515.95, and added it to the total deductions of the corporation, $36,097.28, making a total deducted for depreciation of $44,613.23. Deducting this from the original cost leaves a balance of $508.37, the amount of depreciation allowed by the Commissioner for the year 1929.

The sole question here for determination is whether or not the Commissioner of Internal Revenue was entitled to reduce the depreciation otherwise allowable to the appellant, by the amount of depreciation taken by appellant's transferor, prior to the date of the transfer.

The conclusion reached in this case by the Commissioner and the Board is correct. Section 112 of the Revenue Act of 1928, 45 Stats. 816 (26 USCA § 2112), defines the exceptions to the general rule under which gain or loss shall be recognized. These exceptions relate to exchanges of property solely in kind. Among the exceptions, in paragraph (5) of subsection (b), it is provided: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

So far as the record discloses in this case, the stock exchanged for the printing plant represented its full value. In other words, the printing establishment merely passed from private to corporate ownership; the private owner becoming the owner of the corporation. It follows, therefore, that so far as computation for depreciation is concerned, the transferee merely steps into the position of the transferor; and, having done so, assumes as a basis for computation of depreciation the cost of the assets to the transferor. Having assumed this position, the transferee, as expressed in the opinion of the Board, "cannot then step out of that position in fixing the total amount of depreciation allowable as contended by petitioner. To follow such theory would permit double deduction for the loss of the same capital assets, and be wholly incompatible with the entire rationale upon which is based the deductibility of depreciation in computing income taxes."

In other words, to permit petitioner corporation, when it stepped into the shoes of Shaw, to start anew as a basis of depreciation the original cost of the machinery and equipment, would enable it ultimately to absorb in depreciation the amount of $8,515.95, paid by Shaw in the two years prior to the transfer. This is contrary to the theory of the law. As said by Mr. Justice Brandeis, in United States v. Ludey, 274 U. S. 295, 301, 47 S. Ct. 608, 610, 71 L. Ed. 1054: "The theory underlying this allowance for depreciation is that by using up the plant a gradual sale is made of it. The depreciation charged is the measure of the cost of the part which has been sold. When the plant is disposed of after years of use, the thing then sold is not the whole thing originally acquired. The amount of the depreciation must be deducted from the original cost of the whole in order to determine the cost of that disposed of in the final sale of properties. Any other construction would permit a double deduction for the loss of the same capital assets."

In other words, when the annual deduction in the present case, of 10 per cent. of the original cost equalled in 10 years the original cost, the allowance for depreciation was complete, and no further depreciation allowance for the equipment and machinery could be made; however, if, after this full depreciation, a sale of the property is made, the amount realized for the equipment and machinery would constitute a taxable asset. To permit these 10 per cent. deductions to extend beyond the time or period when they equal the cost of the assets, or to be juggled,

as is attempted in the present case, would amount to a double deduction for the loss of the same capital assets, in the amount that the depreciation deducted in total exceeds the original cost.

The decision of the Board of Tax Appeals is affirmed.