CHARLES AND RUTH L. B. WILLIAMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williams v. Commissioner
Docket No. 29312-89
United States Tax Court
T.C. Memo 1991-567; 1991 Tax Ct. Memo LEXIS 615; 62 T.C.M. (CCH) 1244; T.C.M. (RIA) 91567; November 25, 1991, Filed *615 Decisions will be entered under Rule 155. Herbert G. Feinson, for the petitioner. Paul Schneiderman, for the respondent. WOLFE, Special Trial Judge. WOLFE
MEMORANDUM OPINION This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1] Respondent determined a deficiency of $ 2,871 in petitioners' Federal income tax for 1986. After concessions by the parties, the issues for decision with respect to petitioners' Federal income taxes for 1986 are: (1) Whether petitioners had unreported income in the amount of $ 1,700; (2) whether petitioners have substantiated and are entitled to a depreciation deduction in the amount of $ 1,033 and a deduction of $ 343 for utility expenses allocable to the business use of their home; (3) whether petitioners have substantiated *616 and are entitled to a depreciation deduction in the amount of $ 1,500 for a music library; (4) whether petitioners have substantiated and are entitled to a depreciation deduction in the amount of $ 210 for a piano; (5) whether petitioners have substantiated and are entitled to a deduction in the amount of $ 1,254 for telephone expenses; and (6) whether petitioners have substantiated and are entitled to a depreciation deduction in the amount of $ 1,154 with respect to the business use of their automobile and a deduction in the amount of $ 1,459 for additional automobile expenses. Some of the facts are stipulated, and the stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Alexandria, Virginia, at the time the petition was filed. Between 1962 and 1982, petitioners lived in West Berlin, West Germany, where Charles Williams (hereafter petitioner) initially was a music student and later began a career as an opera singer. In 1986, petitioner was working as an independent contractor opera singer and had contracts for performances in Ohio, Europe, and with the New York Metropolitan Opera. In addition to performing that year, petitioner *617 taught voice and theater at the Levine School, where he held the position of cochairman of the voice department and head of the music theater department. In the summer of 1986, petitioner was codirector of performing arts at the summer workshop session of the Institute for Practical Idealism (Institute). Petitioner Ruth Williams worked as a secretary for World Resources Institute and as a copy editor for Time-Life. Petitioner bears the burden of proving that respondent's determinations are erroneous. Rule 142(a). For convenience and clarity, we have set forth our additional findings of fact and the applicable law with respect to each issue separately. 1. Unreported Income
In 1986, petitioner received $ 1,700 in wages from the Institute. Petitioner stipulated to the amount received and also to the characterization of this amount as "wages." He also testified that this payment was for his services as codirector of performing arts at the Institute's summer camp pursuant to a contract. His duties at the camp included teaching voice, directing, choreographing, and working with students in the production of an original musical. Petitioner's contract with the Institute provides *618 for his services as a "full staff member," designates specific duties, and also states that he shall perform "any additional duties as may be required." Petitioner's employer, the Institute, filed a Form W-2 Wage and Tax Statement with respect to petitioner's employment during 1986 and indicated on the Form W-2 the amount of his wages ($ 1,700) and the amount of Social Security tax withheld ($ 121.55). No amount was withheld for Federal or State income taxes. The record does not include an IRS Form W-4 or any information as to the number of exemptions petitioner claimed to his employer with respect to income tax withholding. Petitioner has failed to explain the reason for his employer's failure to withhold income tax. As to the question whether petitioner was an employee of the Institute, section 31.3401(c)-1(a), Employment Tax Regs., states that the term "employee" includes "every individual performing services if the relationship between him and the person for whom he performs such services is the legal relationship of employer and employee." See also sec. 3121(d)(2). Each case depends upon the facts and circumstances of that particular case. United States v. Silk, 331 U.S. 704, 716, 91 L. Ed. 1757, 67 S. Ct. 1463 (1947). *619 Generally, however, an employer-employee relationship exists when the person or persons for whom the services are performed "has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished." Sec. 31.3401(c)-1(b), Employment Tax Regs.; sec. 31.3121(d)-1(c)(2), Employment Tax Regs.
In the present case, petitioner performed services at a summer camp for the Institute which were similar to the services he performed during the winter as an employee of the Levine School of Music. In each case, he taught voice and instructed at musical theater workshops of various types. In each case, petitioner worked on the employer's premises or at least at a place chosen by the employer. In each case, he received payment from the employer, who filed a Form W-2 reflecting petitioner's wages. Petitioner has not suggested that he worked independently of the employer's supervision, and there is nothing in the record to suggest that he worked other than as an employee engaged in teaching voice and theatrical arts. The record here includes an unequivocal contract *620 of petitioner's employment as a full staff member and plainly demonstrates that in 1986, petitioner was an employee of the Institute, received $ 1,700 as wages for his services, and failed to report such amount as wages on line 7 of his Form 1040 for 1986. Petitioner now contends that he included the $ 1,700 in his self-employment income reported on Schedule C, and that since his employer withheld Social Security taxes on his earnings from the Institute, there is no omission of income and no tax due with respect to this matter. Taxpayers are required to maintain books or records sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown on their tax return. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). Petitioner failed to maintain books and records with respect to his gross income from self-employment during 1986. On Schedule C of petitioner's tax return for 1986, he reported gross receipts of $ 12,450. Counsel for petitioner explains that the Schedule C amount includes only receipts for two performances in 1986, a concert in Budapest, Hungary, and *621 a television show in Vienna, Austria, for which petitioner received a total of $ 4,970. Petitioner's counsel suggests that in determining the gross income figure reported to the tax return preparer, petitioner Ruth Williams added on the $ 1,700 from the Institute and an arbitrary additional amount to arrive at a total of $ 12,450. This guesswork theory is inconsistent with petitioner's testimony that in 1986 he worked in a series of performances of "Porgy and Bess" at the opera in Berlin and also gave a concert for Muse Machine in Dayton, Ohio. Petitioner did not testify as to the length of the series of performances in Berlin or the amount of his compensation for services in Berlin and Ohio in 1986. Petitioner failed to maintain books and records of his receipts from self-employment during 1986, and the testimony of both petitioners as to the amount of his self-employment earnings during 1986 and the number of his performances during that year is vague and unconvincing. Accordingly, we find that petitioner omitted $ 1,700 of wages from his 1986 Federal income tax return. Petitioner has failed to maintain records or establish by documentary evidence or convincing testimony that *622 this amount was reported as self-employment income. Respondent's determination that petitioner omitted $ 1,700 from gross income for 1986 is sustained. 2. Home Office Expenses
Section 280A generally disallows a deduction with respect to the business use of a taxpayer's personal residence. Section 280A(c)(1)(A), however, provides that section 280A(a) shall not apply if a portion of the personal residence of a taxpayer is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer. For a deduction to be allowed under section 280A(c)(1)(A), the taxpayer must establish that a portion of his dwelling unit is (1) exclusively used, (2) on a regular basis, and (3) as the principal place of business for any trade or business of the taxpayers. If the taxpayer is an employee, the taxpayer also must establish that the office is maintained for the convenience of the employer. In the present case, the parties disagree as to whether petitioner satisfied any of these four requirements. On Schedule C of his 1986 tax return, petitioner claimed a depreciation deduction in the amount of $ 1,033 for the business use of the family home *623 in Alexandria, Virginia. The total area of petitioner's house is approximately 1,582.57 square feet, and consists of a living room, dining room, bathroom, kitchen, and three bedrooms. Petitioner's claims with respect to the business use of several portions of the house are discussed separately below: a. Dining Room and Area in Living Room Occupied by Stereo System
The total area of the dining room is approximately 120 square feet and petitioner claims that approximately 60 square feet was used for business purposes. Petitioner's piano and two bookshelves containing a portion of his music library were against one wall of the dining room. The dining room also contained a dining table and buffet. The dining room was the area where the family dined and where petitioners did their entertaining. Mrs. Williams testified at trial that it was possible she may have worked at the dining room table and played the piano in 1986. Petitioner's daughter played the piano when she was home for the holidays. In 1986, petitioner's living room contained a couch, chest, table, television, and stereo system. The stereo system was not used solely for business purposes. It also was used for *624 personal enjoyment of petitioner and his family. Petitioner did not submit any evidence indicating that a partition was used to separate areas in the living and dining rooms claimed as business use areas from those recognized as personal use areas. Under section 280A(c)(1) exclusive use of a portion of a taxpayer's dwelling unit means that the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business. The use of a portion of a dwelling unit for both personal purposes and for the carrying on of a trade or business does not satisfy the exclusive use test. For example, a taxpayer who uses a den in his dwelling unit to write legal briefs, prepare tax returns, or engage in similar activities, as well as for personal purposes, will be denied a deduction for the expenses paid or incurred in connection with the use of the residence which are allocable to these activities. S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 186; H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 853. The exclusive use test does not require that the portion of a room used for business must be separated physically from the *625 rest of the room by a wall, partition or other demarcation, but only that the absence of such a physical separation be a factor for the Court to weigh. See Weightman v. Commissioner, T.C. Memo 1981-301. However, where both business and personal activities permeate an entire apartment, this Court has declined to find that a specific portion of the home had been used exclusively for business purposes. See Naggar v. Commissioner, T.C. Memo 1983-559. Petitioner admittedly used his dining room for dining and entertaining guests, and also for piano playing for personal pleasure. The stereo system purportedly was located in a portion of the living room, and was used for both personal pleasure and business. The business and personal uses of both the dining room and stereo area were so intermingled that we cannot find that a specific portion was used exclusively for business purposes. Since petitioner does not use any portion of the dining or living room exclusively for business purposes, he has failed to satisfy one of the requirements of section 280A(c)(1)(A) and respondent is sustained in disallowing any home office deduction for this portion *626 of petitioner's residence. b. Back Bedroom
Petitioner claims he used the total area of the back bedroom as a home office. The room contained petitioner's personal, house, and business files, personal reference books, music books, and a desk, and is approximately 102.82 square feet in area. Petitioner used the back office to write letters, study, and make phone calls. Mrs. Williams only went to the back bedroom to get business and house files from her husband. Petitioner's daughter slept on a pullout cot in the back bedroom when visiting during the holidays. Under these circumstances, the business and personal uses of the back bedroom were so intermingled that we cannot find a specific portion was used exclusively for business purposes. Accordingly, respondent is sustained in disallowing any home office deduction for this portion of petitioner's residence. c. Master Bedroom
Petitioner claimed that approximately 100 square feet of their 155.4-square-foot master bedroom was used as a home office. Two walls of the bedroom were used by petitioner Ruth Williams for her desk, copy editing books, and file cabinets. Petitioner did not submit any evidence that the master *627 bedroom was used in his trade or business. Petitioners slept in their master bedroom and kept dressers containing their clothing there. Although petitioner claims that his wife used an area of the bedroom as her home office, this testimony is unconvincing because of the conflicting testimony by Mrs. Williams that she did not take copy editing home with her, but only that she might have taken a letter home to correct for someone. Petitioners did not present any evidence to establish that Mrs. Williams was engaged in a trade or business which required the use of a home office. Accordingly, we find that petitioners did not use any portion of their master bedroom as a home office and respondent is sustained on this issue. For reasons set forth above, respondent is sustained in disallowing utility expense deductions claimed by petitioner in connection with his home office. 3. Depreciation of the Music Library
On Schedule C of his tax return, petitioner claimed a depreciation deduction for his music library in the amount of $ 1,500. The deduction is based on a $ 15,000 estimated cost basis and a useful life of 10 years. The library was located in the dining area, back bedroom, *628 and next to the stereo in the living room. The library consisted of scores, records, books of songs, operas, and operettas. On Schedule C petitioner claimed that the library was acquired in 1983. Petitioner testified at trial that the books, records, and scores making up the library were acquired over a 20-year period, beginning when he was a student living in Germany and continuing until after his return to the United States in 1982. Petitioner did not produce invoices, canceled checks, or other documentation to support his estimate of the value of his music library. In addition, petitioner testified that he was not sure whether the cost of some books and records had been deducted in previous years. Petitioner has the burden of proving that he is entitled to depreciation claimed. Bell Electric Co. v. Commissioner, 45 T.C. 158, 167 (1965). Section 167(a) permits a taxpayer to deduct a reasonable allowance for the exhaustion and wear and tear of property used in a trade or business or property held for the production of income. The purpose of the deduction for depreciation is to allow the taxpayer to recover over the useful life of the property, its cost *629 or other basis. United States v. Ludey, 274 U.S. 295, 300-301, 71 L. Ed. 1054, 47 S. Ct. 608 (1927). The period for depreciation of an asset commences when the asset is first placed into service. Sec. 1.167(a)-10(b), Income Tax Regs. Deductions for depreciation must be taken in the year in which depreciation occurs and cannot be taken in subsequent years by reason of a taxpayer's failure to deduct the depreciation allowance in prior years. Sec. 1.167(a)-10(a), Income Tax Regs.
A depreciation deduction is allowable for a library which is used in the trade or business of the taxpayer. Beaudry v. Commissioner, 150 F.2d 20, 21-22 (2d Cir. 1945), affg. on this issue a Memorandum Opinion of this Court. Generally, depreciation is computed by using the cost of the property as its basis. Secs. 167(g), 1011, 1012; sec. 1.167(g)-1, Income Tax Regs. Petitioner presented no evidence of the cost of the library but only offered an estimate of its value. Under some circumstances we are permitted to make an estimation of expenses. When a taxpayer has insufficient records to substantiate claimed deductions, we are permitted to estimate expenses when we are convinced from the record *630 that the taxpayer has incurred such expenses. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). For us to make an estimate, there must be sufficient evidence to show that the amount estimated actually was spent or incurred for the purpose claimed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731 (1985). Furthermore, in making an estimate, we must bear heavily on petitioner, "whose inexactitude is of his own making." Cohan v. Commissioner, supra at 544. Petitioner offered no support for his claim as to the cost of his library that would permit us to make even a minimally accurate approximation of that cost. Moreover, petitioner did not present evidence indicating the dates of acquisition of the various materials in the library. Although we know the purchases were made in the years 1962 through 1982, we do not know the age of the items in petitioner's library in 1986. Consequently, we do not know how much, if any, of their useful life remains. Petitioner has only told us that during 1986, he had a music library which he purchased at some time *631 for an unknown amount and has invited us to agree with his estimate or make our own guess as to the amount of depreciation allowable. We decline to guess. Instead, due to petitioner's failure to substantiate the cost and age of his library, we sustain respondent's determination on this issue. 4. Depreciation of the Piano
On Schedule C of his tax return, petitioner claims a depreciation deduction in the amount of $ 210 for a piano acquired in 1983. The deduction was computed based on a cost basis of $ 1,000 and a useful life of 5 years. Depreciation is allowed only with respect to property "used in a trade or business" or "held for the production of income." Sec. 167(a). Although petitioner is an opera singer and not a professional pianist, he used the piano as an aid in learning his music. Even though petitioner did his practicing at his coach's apartment, he also did coaching, working, and studying at home. We find that the piano was used by petitioner when he was working at home, and was used by petitioner in his position as a music teacher and in his business as an opera singer. However, the piano served a dual purpose, because it was used for personal enjoyment *632 by petitioner's wife and daughter. When property serves both personal and business functions, a depreciation deduction is allowed only for the wear and tear attributable to the business use, and an allocation is to be made based on the percentage of business and personal use. International Artists, Ltd. v. Commissioner, 55 T.C. 94, 105 (1970). We find that an approximation is justified under the rule set forth in Cohan v. Commissioner, supra.We find that the piano was used for business purposes 75 percent of the time. Accordingly, petitioner is allowed a depreciation deduction equal to 75 percent of the depreciation claimed or $ 158. 5. Telephone Expenses
On Schedule C of his tax return, petitioner claims a deduction in the amount of $ 1,597 for utilities and telephone expenses. In petitioner's reply brief, petitioner claims that 25 percent of utility expenses or $ 343 is included in this amount. Petitioner now claims that of the remaining amount of $ 1,254, only 75 percent or $ 941 was expended for business-related telephone calls. Petitioner did not present any records establishing the amount of telephone expenses paid *633 in connection with his business as an opera singer. He estimates that 75 percent of his calls were business related. Despite petitioner's failure to maintain records of his business telephone expenses, based on petitioner's testimony, we are satisfied that he had some telephone expenses in connection with his business. We find that petitioner paid in connection with his business approximately 50 percent or $ 630 of the remaining telephone expenses claimed. 6. Automobile Expenses
On Schedule C of his tax return, petitioner claims a depreciation deduction for his automobile in the amount of $ 1,154 and a deduction in the amount of $ 1,459 for additional automobile expenses. The depreciation deduction is based upon a business use of 75 percent. Petitioner used his car for travel to his places of employment in the Washington area and for rehearsals and teaching. Section 162(a)(2) permits a deduction for traveling expenses, including amounts expended for meals and lodging, if such expenses are (1) ordinary and necessary; (2) incurred while "away from home"; and (3) incurred in the pursuit of a trade or business. However, the costs of daily commuting between a taxpayer's *634 home and his place of employment are considered nondeductible personal expenses. Sec. 262; sec. 1.262-1(b)(5), Income Tax Regs.; Fausner v. Commissioner, 413 U.S. 838, 839, 37 L. Ed. 2d 996, 93 S. Ct. 2820 (1973); Green v. Commissioner, 59 T.C. 456, 459 (1972). This rule applies regardless of whether the taxpayer travels between his residence and one fixed job site or between his residence and a variety of job sites within the same metropolitan area. Steinhort v. Commissioner, 335 F.2d 496, 505 (5th Cir. 1964), affg. a Memorandum Opinion of this Court. Petitioner's own testimony at trial convinces us that his automobile was used for commuting. He failed to show any other business use of his car. Accordingly, respondent's disallowance of the claimed deductions for automobile expenses and depreciation is sustained. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code, as amended and in effect for the tax year at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩